ELIZABETH M. MACFARLANE *v.* W. STUART MACFARLANE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 8—decision released July 17, 1979

*Gordon A. Evans,* for the appellant (plaintiff).

*William J. Doyle,* with whom was *Linda L. Randell,* for the appellee (defendant).

BOGDANSKI, J.  This appeal arises out of a judgment for the defendant in an action upon a separation agreement executed by the parties in June of 1968 and sued upon by the plaintiff in 1977.

The first three counts of the plaintiff's amended complaint alleged various breaches of the parties' separation agreement by the defendant.  The fourth count alleged that the defendant had failed to repay certain bank loans when due and that the plaintiff

had been obliged to make good on the loans in order to protect her assets which had been pledged as collateral. The fifth count sought damages and attorney's fees. The defendant filed an answer denying the essential allegations of the plaintiff's complaint and asserting, in addition, a number of special defenses. The defendant also counterclaimed, alleging (1) that the plaintiff had breached the separation agreement and (2) that she had abused the processes of the courts by instituting and continuing lawsuits against him in the Federal Courts of New York and Massachusetts.

After a lengthy trial involving complicated issues of both law and fact, the jury returned general verdicts for the defendant on each of the five counts in the plaintiff's complaint and in favor of the defendant on each of his counterclaims. The plaintiff moved to set aside the verdicts and for judgment notwithstanding the verdicts. The trial court granted the plaintiff's motion to set aside the verdict as to the second counterclaim only (the abuse of process claim), denied the motion in all other respects and rendered judgment for the defendant.

On appeal the plaintiff has briefed and argued seven claims of error.[1] Three of the claimed errors involve the court's charge with respect to the $11,000 lump sum alimony payment at issue in the first count of the complaint; three concern rulings in connection with the defendant's second counterclaim (the abuse of process claim); while the final claim is that the court, in interpreting the parties' separation agreement, incorrectly applied a theory of dependent covenants.

---

[1] The plaintiff makes no claim that the evidence in the record was not sufficient to sustain the verdicts for the defendant.

Before we can properly discuss these claims of error, however, we must first set out, in some detail, the rather extensive factual background of the litigation. From the evidence presented the jury could have found the following facts: In 1963 or 1964, while still married, the plaintiff and the defendant became interested in buying and developing a 230-acre parcel of property located on Martha's Vineyard, Massachusetts, containing some waterfront and a house. The plaintiff and the defendant joined with the defendant's parents in purchasing the property, with each providing a quarter of the down payment necessary to effectuate the purchase. In September of 1964, the parties formed a corporation, known as Mohu Properties, Inc. (hereafter Mohu or the corporation) to develop the property, with each receiving a 25 percent stock interest.

In order to support themselves and their children while developing the Mohu property, the plaintiff and the defendant borrowed substantial sums from the First New Haven National Bank. Securities owned by the plaintiff were pledged as collateral for those loans. In 1966 the parties separated. In early 1967, when the parties were negotiating the division of their property, the plaintiff asked the defendant to give her his stock in the Mohu corporation since it was her money (i.e., the pledge of her assets as collateral) which had made it possible to purchase and develop the property. The defendant agreed on the understanding that the plaintiff, who would then have all the benefit of the investment, would thereafter have the obligation of repaying the loan which had made the investment possible.

In July of 1967 after a Paul Adams, as trustee of the Stone trusts, had agreed to invest in Mohu,

the plaintiff, the defendant and Adams entered into an agreement for the reorganization of the corporation. This agreement, drafted by the plaintiff's attorney, provided that the plaintiff was to receive stock in the reorganized corporation in exchange for her original shares and for the shares which had been given to her by her husband.[2] The agreement further provided that for one year after the reorganization, the corporation would have the option of purchasing from the plaintiff her shares in the corporation for the sum of $250,000.[3]

The 1967 agreement elsewhere provided that the plaintiff was to receive a deed to a three-acre parcel of the Mohu property known as the "ridge site" in exchange for which the plaintiff and defendant would deed to the corporation the site containing the house and the surrounding acreage. The agreement further provided that if the plaintiff's shares were purchased or redeemed and if she received a deed to the "ridge site," she was to give the defendant a release of all claims existing up to the date of the agreement, whether for advances to the defendant, for amounts paid by the plaintiff for support, or for invasion of the plaintiff's capital.

In June of 1968, the plaintiff, the defendant and the corporation entered into a new agreement as to the contemplated transfers of the Mohu property. The new agreement, like the July, 1967, agreement, was drafted by the plaintiff's attorney. This agreement, dated June 21, 1968, provided for the transfer

---

[2] As part of the reorganization the defendant received an equal number of shares in exchange for the shares which he had received from his parents.

[3] That option was subsequently exercised by the corporation in accordance with the provisions of the July, 1967, agreement.

of the "ridge site" to the plaintiff, with the deed to include certain easement or access rights. The plaintiff and the defendant in turn agreed to transfer the house and surrounding acreage to the corporation for a price of $85,000. The closing date for these transfers was set by the agreement as "September 10, 1968 or such other date as shall be mutually agreed upon." Like its predecessor, this agreement also provided that upon consummation of the above conveyances and payments, the plaintiff would release the defendant from all claims existing up to July 31, 1967, whether for advances, support or invasion of capital.

On June 22, 1968, the plaintiff and the defendant entered into a separation agreement. That agreement, which is the subject of the present lawsuit, provided for various real estate conveyances; custody and maintenance of their children; alimony to the plaintiff; insurance obligations of the defendant; allocation of the family home in Woodbridge; and the division of the household possessions. Paragraph eleven of the agreement provided that the plaintiff agreed to join with the defendant in conveying the Mohu house to the corporation for $85,000, with the sale to be "closed on or before Sept. 10, 1968," and that at the time of the closing the defendant shall pay to the plaintiff the sum of $11,000 in accordance with the provisions of subparagraph (b) of paragraph six of the agreement. That subparagraph, in turn, provided that the $11,000 was to be paid "in cash or by certified or bank cashier's check on or before September 10, 1968, or the sale of the so-called Mohu House on Martha's Vineyard, whichever is earlier." Paragraph twenty provided that upon the closing of the transactions

and the transfer to the plaintiff of the "ridge site," the defendant would receive a "release of all claims" from the plaintiff.

The projected conveyances and payments did not take place on September 10, 1968, as planned, because a dispute had arisen among the parties as to the rights to be included in the deed to the "ridge site." In an effort to resolve the dispute, the parties agreed to extend the time for closing. The efforts to negotiate a settlement were unsuccessful, however, and on November 25, 1969 the plaintiff brought an action in a United States District Court in New York against the defendant and the corporation, seeking specific performance of the June 21 and June 22, 1968, agreements. On November 26, 1969, the plaintiff filed suit against the defendant and the corporation in a United States District Court in Massachusetts, seeking a declaratory judgment as to the rights and obligations of the parties under the June 21, 1968, agreement and also specific performance of the agreement, as she had requested in the suit filed in New York the day before.

In early 1970, while the federal court actions were pending, the parties, through their attorneys, negotiated a settlement pursuant to which the plaintiff was to receive a deed to the "ridge site" from Mohu in accordance with the June 21 and 22 agreements, as well as payment of $11,000 from the defendant. The closing was set for March, 1970. Prior to that date, however, the plaintiff discharged her attorneys and refused to go forward with the closing.

The plaintiff then hired new counsel, and once again a settlement was negotiated pursuant to which the plaintiff would receive exactly what she had sued for in the New York and Massachusetts

actions, i.e., a deed to the "ridge site" and the payment of $11,000 by the defendant. Once again, shortly before the closing, which had been set for November 20, 1970, the plaintiff discharged her new attorneys and refused to go through with the closing. The record indicates that the plaintiff did not want to accept the deed to the "ridge site" tendered by the corporation nor the payment of the $11,000 by the defendant because she did not want to give the defendant the release required by the agreements.

In 1972, the plaintiff agreed to abandon her claims against the corporation in exchange for the right to purchase all 230 acres of the Mohu property from the corporation. When the plaintiff had the Massachusetts action dismissed, with prejudice only as to the corporation, the defendant appealed from the order of dismissal and the Court of Appeals for the First Circuit directed the District Court to omit from the order the language that the dismissal did not act as a waiver or release of any of the plaintiff's claims against the individual defendant. In December, 1972, the plaintiff and the defendant filed a stipulation of discontinuance of the New York action which provided, among other things, that the defendant could assert in any other action that the plaintiff had waived any right to receive the $11,000 payment, while the plaintiff could claim that she had not waived such right. In June of 1971, while the New York and Massachusetts actions were still pending, the plaintiff commenced the action which is presently before this court on appeal.

The plaintiff's first claim in this appeal is that the court erred in instructing the jury that the $11,000 payment was not due under the contract

until the sale of the Mohu house took place. She contends that the separation agreement was ambiguous as to the date on which the payment was due; that there was an apparent inconsistency between paragraphs eleven and paragraph 6 (b) and that the court should have instructed the jury to examine the provisions of the contract and make their own determination as to when the $11,000 payment was due. The plaintiff's second claim is that the question of whether the time fixed by the contract was of the essence should also have been submitted to the jury as a question of fact. The plaintiff contends that had the court given proper instructions the jury might reasonably have found for her on counts one, two, three and five of her complaint, as well as upon the defendant's first counterclaim and therefore that the verdicts for the defendant on these counts must be set aside by this court. We do not agree.

We note that in his answer the defendant not only denied that he had breached the agreement between the parties in any respect, but that he also asserted several special defenses, including breach of the agreement by the plaintiff, waiver, estoppel and discharge.

Because the verdicts in the case were general verdicts, the ground or grounds upon which the jury's verdicts rest are unknown. In cases of general verdicts the presumption is, however, that all issues of facts were found in favor of the prevailing party. *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 411, 363 A.2d 86 (1975); *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 362, 294 A.2d 305 (1972). When, as here, the parties are at issue on two or more distinct defenses and a general verdict is returned the

verdict will be sustained when it can be supported on the basis of any one of them. *Hally* v. *Hospital of St. Raphael,* supra; *Hanken* v. *Buckley Bros., Inc.,* 159 Conn. 438, 442, 270 A.2d 556 (1970); *Meglio* v. *Comeau,* 137 Conn. 551, 553–54, 79 A.2d 187 (1951). In view of the pleadings and evidence in the record we conclude that the verdicts in favor of the defendant must be sustained.

As previously noted, one of the issues actually litigated at trial was whether the plaintiff, by bringing and then dismissing the New York and Massachusetts actions for specific performance, had expressly or impliedly waived any claim which she might otherwise have had by reason of the defendant's alleged failure to timely make the disputed payment. Since the stipulation in the New York action and the order of dismissal in the Massachusetts action, as modified by the Court of Appeals, both expressly left open the question of waiver, we do not see how the plaintiff can claim that the court erred in permitting the jury to determine as a question of fact whether the plaintiff, under all the circumstances, could be said to have waived any claim that the alleged delay in the payment of the $11,000 by the defendant constituted a breach of the parties' separation agreement.

The plaintiff's next two claims of error concern the court's refusal to admit into evidence portions of a letter from the plaintiff's Massachusetts counsel. Since this letter was offered on the issue of the plaintiff's good faith in refusing to accept the deed to the "ridge site" tendered to her in December of 1970, an issue relevant only to the abuse of process counterclaim, we find no need to consider these claims because any possible error in the court's rulings was rendered harmless by the court's action in

setting aside the verdict upon that counterclaim. For the same reason, we do not find it necessary to consider the claim of error predicated upon the trial court's refusal initially to direct a verdict for the plaintiff upon the abuse of process counterclaim.

The plaintiff's seventh and final claim is that the court erred in applying a theory of dependent covenants in interpreting the parties' separation agreement. Since this claim was not raised in the trial court and since there is absolutely no indication in the record of the type of exceptional circumstances necessary to justify this court's departure from the well-settled rule that claims of error not raised distinctly at the trial will not be reviewed on appeal,[4] we decline to consider this claim of error. *State* v. *Zeko,* 176 Conn. 421, 426, 407 A.2d 1022 (1979); *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973).

There is no error.

In this opinion the other judges concurred.

---

[4] "[Practice Book, 1978] Sec. 3063. ERRORS CONSIDERED The supreme court shall not be bound to consider any errors on an appeal unless they are specifically assigned or claimed and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial."