JANICE GOOLD *v.* PETER GOOLD
(4650)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 4—decision released June 16, 1987

*Gaetano Ferre,* for the appellant-appellee (defendant).
*Ellen B. Wells,* for the appellee-appellant (plaintiff).

DuPont, C. J. The defendant husband appeals and the plaintiff wife cross appeals from the trial court's calculation, in a contempt proceeding, of the amount of child support arrearages owed by the defendant. The trial court found that the defendant was in arrears in the amount of $27,952.46 for the years 1980 through 1983. The defendant claims that the trial court erred (1) by refusing to credit the defendant with payments made for the support of his son during the time period in which the son was in his physical custody, (2) by including the profit realized from the exercise of a stock option in its assessment of his income for 1982, (3) by failing to reduce his income in 1982 and 1983 by net rental losses realized by him in both years, and (4) in concluding that one half of a sum listed on a joint tax return as income realized from pensions and annuities was attributable to him without any direct evidence to that effect. In her cross appeal, the plaintiff alleges that the trial court erred (1) by concluding that only a portion of the distribution from an employee thrift incentive plan constituted income for purposes of calculating child support, (2) by giving the defendant credit against his arrearages for payments made for the support of a child after she reached the age of majority, and (3) in failing to award counsel fees.

The trial court found that the marriage of the parties was dissolved on December 21, 1976, and that the decree incorporated by reference a separation agreement dated April 1, 1976. The agreement provided that the plaintiff would have custody of the parties' three children, Geoffrey, Jennifer, and Laura. It further provided that in the event that the plaintiff remarried, the defendant would pay to the plaintiff child support, in the amount of $416.66 per month, for the support of each child, "to commence from the date of such remarriage, until said child dies, marries, becomes wholly self-

supporting, or attains the age of 21 years . . . ." In addition, the defendant was required to pay to the plaintiff as child support for each child the sum of 10 percent of the defendant's income that exceeded $67,500 annually.

The plaintiff remarried in 1980. During that year, Geoffrey experienced difficulties in the local public school system. After consulting with a counseling physician, both the plaintiff and the defendant agreed that Geoffrey should attend a private school in New Canaan. The parties further agreed that it would be in Geoffrey's best interests to live with his father nearer to the private school. Geoffrey thereafter moved in with the defendant in May of 1980, and the defendant immediately ceased making any child support payments to the plaintiff for their son. In the summer of 1980, the plaintiff requested in writing that the defendant continue child support payments for Geoffrey, but the defendant refused to make such payments. Geoffrey continued to reside with the defendant for two years until he reached the age of eighteen. During that time period, the plaintiff maintained a bedroom for Geoffrey at her house, and continued to purchase clothing for her son. Because the defendant traveled frequently, Geoffrey spent a number of weekends with the plaintiff. Moreover, the plaintiff took Geoffrey on vacation with her.

On May 5, 1983, the plaintiff filed a motion for contempt against the defendant. In that and various amendments to such motion, she moved the court to find the defendant in contempt of court for failure to pay her the correct amount of child support for their three children. After a hearing, the trial court did not

hold the defendant in contempt, but ordered him to pay $27,052.46 to the plaintiff for unpaid child support.[1]

## I

In his first claim of error, the defendant alleges that the trial court erred in its calculation of the arrearage owed to the plaintiff for child support for their son Geoffrey during the two years that Geoffrey resided with him. The defendant claims that he is entitled to a credit for the amount expended by him for Geoffrey during that time period, and that the trial court erred in refusing to recognize such credit.

A considerable conflict exists among various courts as to whether or not any credit should be given to a parent ordered by a court to make child support payments to the other parent, for payments made on behalf of a child while that child is actually in his physical custody. See annot., 47 A.L.R.3d 1031; annot., 2 A.L.R.2d 831; 24 Am. Jur. 2d, Divorce and Separation § 1077. Some courts have recognized that a parent is *not* entitled as a matter of law to credit for such voluntary expenditures made in a manner other than that specified by the divorce decree. See, e.g., annot., 47 A.L.R.3d, supra, § 3.[2] Other courts hold that situations

---

[1] In its memorandum of decision, the trial court originally stated: "[W]e are not holding the defendant in contempt because we do not believe his failing to pay the plaintiff represented a willful flaunting of the Court's order. He is, however, ordered to pay within sixty days $23,140.46 for Geoffrey, and $7138 for the calendar year 1982, less a credit of $1331.36 for 1983, or a total due the plaintiff of $28,955.10."

After the parties filed motions for articulation, however, the trial court recalculated the amount of the arrearage, stating that "[t]he net effect of these recalculations is that Mr. Goold is entitled to a credit for 1983 of $1868, and a further credit for 1980 in the amount of $468.99." The trial court therefore calculated the total amount of arrearage owed by the defendant to the plaintiff to be $27,952.46.

[2] Cases holding that a father is not entitled to credit as a matter of law include: *Shaddix* v. *Shaddix*, 447 So. 2d 808 (Ala. Civ. App. 1984); *Marsh* v. *Marsh*, 426 So. 2d 847 (Ala. Civ. App. 1983); *Nooner* v. *Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983); *Baker* v. *Baker*, 667 P.2d 767 (Colo. App. 1983);

may arise in which equitable considerations would permit a parent to credit, against past due support payments, voluntary expenditures made on behalf of the child. Id., § 4.[3] No universal or general principle has been articulated by the latter courts. Rather, the circumstances of each individual case are considered in determining whether credit can be allowed. 2 A.L.R.2d 831, 833. In all such cases, however, courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court. See., e.g., *Hamilton* v. *Phillips,* 494 So. 2d 659, 661 (Ala. Civ. App. 1986).

In support for his claim that the circumstances of this case warrant the equitable allowance of credit, the defendant asserts that the actual amounts paid by him for the support of Geoffrey exceeded the amounts required by the decree to be paid to the plaintiff as child support.[4] The defendant maintains, therefore, that by

*Raybuck* v. *Raybuck,* 451 So. 2d 540 (Fla. App. 1984); *Martinez* v. *Martinez,* 383 So. 2d 1153 (Fla. App. 1980); *Davis* v. *Davis,* 251 Ga. 391, 306 S.E.2d 247 (1983); *Olson* v. *Olson,* 445 N.E.2d 1386 (Ind. App. 1983); *Peterson* v. *Peterson,* 365 N.W.2d 315 (Minn. App. 1985); *Klinge* v. *Klinge,* 663 S.W.2d 418 (Mo. App. 1983); *Hadford* v. *Hadford,* 633 P.2d 1181 (Mont. 1981); *Hildahl* v. *Hildahl,* 601 P.2d 58 (Nev. 1979); *Evans* v. *Craddock,* 61 N.C. App. 438, 300 S.E.2d 908 (1983); *Eagen* v. *Eagen,* 292 Or. 492, 640 P.2d 1019 (1982); *Bradley* v. *Fowler,* 30 Wash. 2d 609, 192 P.2d 969 (1948).

[3] Cases holding that credit may be allowed where equitable circumstances dictate such result include: *Headley* v. *Headley,* 277 Ala. 464, 172 So. 2d 29 (1964); *Nabors* v. *Nabors,* 354 So. 2d 277 (Ala. Civ. App. 1978); *Cole* v. *Cole,* 101 Ariz. 382, 420 P.2d 167 (1966); *Isler* v. *Isler,* 425 N.E.2d 667 (Ind. App. 1981); *Brady* v. *Brady,* 225 Kan. 485, 592 P.2d 865 (1979); *Dalton* v. *Dalton,* 367 S.W.2d 840 (Ky. App. 1963); *Stemme* v. *Stemme,* 351 S.W.2d 823 (Mo. App. 1961); *McCrady* v. *Mahon,* 400 A.2d 1173 (N.H. 1979); *Evans* v. *Craddock,* 61 N.C. App. 438, 300 S.E.2d 908 (1983); *Beverly* v. *Beverly,* 43 N.C. App. 60, 257 S.E.2d 682 (1979); *Briggs* v. *Briggs,* 178 Or. 193, 165 P.2d 772 (1946); *Schafer* v. *Schafer,* 95 Wash. 2d 78, 621 P.2d 721 (1980).

[4] In his brief, the defendant alleges that he introduced testimony indicating that he had expended a total of $33,733 for the benefit of Geoffrey during the two years that Geoffrey lived with him. Although the court found that the defendant had spent "a lot of money" on Geoffrey during that

ordering the defendant to pay child support for Geoffrey, the trial court conferred a windfall upon the plaintiff. He further maintains that he is entitled to credit because by directly supporting the child, he substantially complied with the decree of dissolution. See H. Clark, Law of Domestic Relations (1968) § 15.3.

Although no Connecticut case has addressed the precise issue presented in this case, we have previously recognized that in some domestic cases unique or compelling circumstances may justify or require equitable relief. *Guss* v. *Guss,* 1 Conn. App. 356, 363, 472 A.2d 790 (1984), citing *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983). The allowance of a credit against past due child support payments has therefore been acknowledged as being appropriate in limited circumstances. These circumstances must be limited in order to prevent hardship to support recipients and to protect "their expectations and [enable] them to rely upon the continuing [support] obligation of the paying spouse . . . ." as provided in a final decree. *Sanchione* v. *Sanchione,* 173 Conn 397, 405–406, 378 A.2d 522 (1977). Although there is no general rule as to when circumstances require the allowance of such credit, factors which have been considered by various courts in

time period, it refused to credit the defendant for any amount, and ordered that he pay the plaintiff $23,140 for child support for Geoffrey.

Following the trial court's decision, the defendant moved for an articulation requesting the trial court to make a finding of fact of the amounts expended by the defendant for Geoffrey during the two-year time period in question. The trial court denied such request, and stated that the decision made clear its opinion "that this amount is irrelevant because the defendant is not entitled to a credit for payments made for his son for the reasons explained in the decision." The defendant thereafter filed a motion for review in this court, requesting that we compel the trial court to make the requested findings. We denied the defendant's requested relief. In his supplemental brief, the defendant alleges that the trial court erred in its refusal to make the requested findings of fact. We do not find error in the trial court's refusal to make such findings under the circumstances of this case.

reaching such decision include (1) whether the father brought a motion for modification of the support order; see *Fowler* v. *Fowler,* 156 Conn. 569, 573, 244 A.2d 375 (1968); *Rempt* v. *Rempt,* 5 Conn. App. 85, 496 A.2d 988 (1985); (2) whether the parties expressly provided in their separation agreement that the father may deduct or adjust support payments when the child is no longer in the mother's custody; see *Swayze* v. *Swayze,* 176 Conn. 323, 408 A.2d 1 (1978); *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 519 A.2d 1237 (1987); *Guss* v. *Guss,* supra, 362; and (3) whether the mother has in some manner consented to accept the father's direct support of the child as an alternative method of payment of child support. See annot., 47 A.L.R.3d 1031, 1035–36; 24 Am. Jur. 2d, Divorce and Separation § 1077, p. 1062; see also *Bradford* v. *Futrell,* 225 Md. 512, 518–19, 171 A.2d 493 (1961).

We conclude that the trial court's denial of credit in the present case was not an abuse of discretion. The trial court noted that the defendant did not ever bring a motion for modification of the support order, although that recourse was always available to him. See *Bozzi* v. *Bozzi,* 177 Conn. 232, 238, 413 A.2d 834 (1979); *Fowler* v. *Fowler,* supra, 573; *Smith* v. *Smith,* 443 So. 2d 43 (Ala. Civ. App. 1983); *McDaniel* v. *Winter,* 412 So. 2d 282 (Ala. Civ. App. 1982); *Hanks* v. *Hanks,* 334 N.W.2d 856 (S.D. 1983); *Bradley* v. *Fowler,* 30 Wash. 2d 600, 192 P.2d 969, 975 (1948).

The trial court also found that the parties had not provided for such credit to be given to the defendant in their separation agreement. Cf. *Swayze* v. *Swayze,* supra. The agreement provided that child support would terminate only when "said child dies, marries, becomes wholly self-supporting, or attains the age of 21 years." The child's change in residence was *not* intended by the parties to constitute sufficient cause for the termination of child support. Moreover, the

agreement provided that the defendant would be credited in only a *few* circumstances relating to the educational expenses of the children. Paragraph 5.7 of the separation agreement provided that in the event that a scholarship was granted, credit was to be given to the defendant for the payment of educational expenses.[5] Furthermore, a credit of $100 per month was to be given to the father if he paid for all of the educational expenses for any one child and the child was living away from home.[6] Such provisions contained in the separation agreement reflect that the parties had contemplated circumstances in which credit or reductions would be permitted. The parties did not provide, however, for credit to be given to the defendant for expenditures incurred by him while Geoffrey resided with him. In fact, their agreement specifically provided that all such expenses incurred by the defendant while the children were in his care, including the costs of food and lodging, were to be borne by him, and that he would "not be entitled to any deduction from payments to the wife on account of amounts expended by him" during such time.[7] The defendant's unilateral reduction of the

[5] Article V, Paragraph 5.7, of the separation agreement provided: "Should the children be entitled to any scholarship or other educational benefits by reason of any Federal or State law, the parties shall cooperate with one another to the extent that such benefits are available, and the amount received shall be a credit to the HUSBAND'S obligation for the payment of educational expenses."

[6] Article V, Paragraph 5.9 of the separation agreement provided: "If the HUSBAND is paying all of the education expenses for any one child as provided in this Article, the HUSBAND shall be entitled to a credit of $100 per month for such child to be applied to the payments to the WIFE that the HUSBAND is obligated to make for alimony and support under Article II of this Agreement during the months of September up to and including May of each school year that the child is living away from home."

[7] Article III, Paragraph 3.2, of the separation agreement provided: "Without limiting the generality of the foregoing, the HUSBAND shall pay all transporation costs and expenses of the children incurred during the time when they are with the HUSBAND, including the costs of food and lodging and the HUSBAND shall not be entitled to any deduction from any payments to the WIFE on account of amounts expended by him during the exercise of his visitation rights."

support payments was not consonant with the intent of the parties as evidenced in their separation agreement. He did not, therefore, substantially comply with the terms of the decree.

The trial court further specifically found that the defendant failed to obtain the consent of the plaintiff for such alternate method of payments. It found instead that after Geoffrey moved in with the defendant, the plaintiff demanded that child support payments for him continue. The defendant refused to comply with her request. The trial court concluded, therefore, that the mother had not consented in any manner to accept the alternate payments as partial or complete satisfaction of the husband's obligation under the decree.

The plaintiff, having obtained legal custody of the children and having been awarded child support for their maintenance, had the right and privilege "to determine how and in what manner child maintenance funds should be spent. 27B C.J.S., Divorce § 321 (2), p. 639." *Rempt* v. *Rempt,* supra, 89. By unilaterally reducing the amount of his child support payments without the consent of the plaintiff, the defendant diverted such maintenance funds from her, thereby reducing her ability to make such decisions. See id. To permit the defendant to receive credit for his payments under these circumstances would be to vary the terms of the decree and usurp from the plaintiff the right to control the disbursement of the support money.

Finally, the trial court found that the plaintiff continued to have expenses relating to the support of Geoffrey after he had moved in with the defendant. The facts of this case, therefore, do not warrant the application of the limited equitable remedy advanced by the defendant.

Absent an action for modification of child support by the defendant, an agreement between the parties allow-

ing such modification, or circumstances warranting the application of a limited equitable remedy, we cannot say that the trial court erred in denying the defendant's request for credit.[8]

## II

The defendant's remaining claims of error challenge the trial court's computation of the defendant's income

---

[8] In his brief, the defendant argues that our holding in *Guss* v. *Guss*, 1 Conn. App. 356, 472 A.2d 790 (1984), establishes that credit can be given in a case in which the wife no longer has custody of the children. That case, however, is inapposite to the present case. In *Guss*, we reversed a trial court's sua sponte modification of a child support order. In doing so, we noted that although ordinarily such a reversal of a modification of an award for support would require the obligated spouse to make payment in accordance with the decree, the unique circumstances of the case required that "we fashion an adequate remedy for any monetary burden to the plaintiff arising out of his custody of the children from the time of the trial court's decision effectively granting him custody until the time of a definitive order of custody." Id., 363. We therefore determined that "the question of what amount, if any, should have been deducted from the [wife's] unallocated award of alimony and support should remain in abeyance until such time as a hearing is held on custody, *and the parties, upon proper motion . . . have introduced whatever evidence is available or necessary to show what sums, if any, were warranted in reduction of the [wife's] award during the time the [husband] has had custody of their children.*" (Emphasis added.) Id., 362–63.

In reaching this conclusion, we noted that the husband had custody of the two children for more than three years pursuant to the trial court's modification of the custody award. Moreover, we noted that the parties had specifically provided in their separation agreement that the monthly child support payments " 'shall be reduced by the sum of $350 per month *or* by such sums as may be allocated to child support at that time as each child . . . ceases to reside with the Wife under such circumstances where the Wife is no longer furnishing such child support . . . . ' " Id., 362. Because of this provision in the parties' separation agreement, and because the husband had no opportunity to show that the monetary needs of the children may not have been equal, or that the need of either one was lesser in amount than $350, we recognized that after an appropriate hearing, a reduction of the child support award may have been appropriate under the unique circumstances of the case. Such circumstances are not presented in the present case, and we therefore find that the limited holding of *Guss* does *not* apply to this case.

in 1982 and 1983 for purposes of determining the amount of child support arrearage owed for the support of Laura and Jennifer, the other children of the parties. The defendant first alleges that the trial court erred in including a $28,740 profit realized from the exercise of a stock option in its computation of his income in 1982.

The defendant received a stock option in 1972 which gave him the right to purchase 2000 shares of General Foods stock at the price of $29.57 per share. He exercised that option on December 6, 1982. He reported $28,740 in income for this transaction on his 1982 income tax return. This amount represented the difference between the market price at the time he exercised the option and the option price. The defendant alleges that this reported income constituted merely a "paper profit," and should, therefore, not have been considered by the trial court as income for the purposes of computing child support pursuant to the separation agreement.

Paragraph 2.6 of the parties' separation agreement defines the term "income" for purposes of determining child support "to mean income actually received by the HUSBAND *and income which he has a right to receive* (except as to options under any pension, profit sharing or deferred compensation plan which shall be includable only when received by the HUSBAND, and excluding any income of any subsequent Wife of the HUSBAND, or any children of the HUSBAND) in each calendar year . . . from any and all sources derived. *Without limiting the generality of the foregoing, 'income' shall include both earned and unearned, taxable and nontaxable income and in particular, all income from . . . [the] exercise of stock options."* (Emphasis added.) The trial court interpreted the agreement as meaning that the profit realized from the

defendant's exercise of the stock option was income for purposes of determining child support payments.

The defendant argues that the terms of the agreement are ambiguous, and that the court should have utilized an equitable and reasonable interpretation. He asserts that the trial court's interpretation ignores the agreement's "carefully drawn distinction between earned income and unearned income." Moreover, he claims that because the agreement excluded options "which shall be includable only when received" from the definition of income, the trial court should have found that income was received when the option was received in 1972, and not when he exercised it in 1982.

The trial court's construction of the separation agreement is an issue of fact subject to review under the limited standard of whether it is clearly erroneous. *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 501, 519 A.2d 1237 (1987); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). "We will not disturb the actions of the trial court unless it abused its legal discretion in making [its] determination. The unquestioned rule is that great weight is due the action of the trial court and every reasonable presumption should be given in favor of its correctness." *Sweeny* v. *Sweeny,* supra. We find that the trial court's conclusion was a reasonable interpretation of the agreement.

The terms of the agreement, contrary to the defendant's claim, were clear and unambiguous. The agreement specifically provided that income realized or that the defendant would have a right to receive from the exercise of stock options would be considered "income" for purposes of calculating child support. The agreement reflects, therefore, that the parties contemplated such a transaction and expressly provided for it to be considered when assessing the income of the defend-

ant. The trial court did not err in giving such provision effect. See *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 648, 153 A.2d 828 (1959).

Moreover, the agreement specified those options which were not to be considered by the parties when determining the defendant's income. These were "options under any pension, profit sharing or deferred compensation plan." The trial court did not find, nor is there any evidence contained in the record which supports the contention, that the exercise of the stock option in this case fell within the realm of this limited category. In interpreting such provisions, "[t]he question is not what intention existed in the minds of the parties but what intention is expressed in the language used." Id., 647. Thus, whatever may have been the defendant's subjective intent with respect to the language contained in the agreement which excluded certain options from consideration when determining income, he clearly and expressly obligated himself to the inclusion of the exercise of stock options by the terms of Paragraph 2.6 of the agreement.

## III

In his next claim of error, the defendant asserts that the trial court erred by failing to reduce his income in 1982 and 1983 by the amount of net rental losses realized in those years. He claims that his income tax returns reflected that his net rental income in 1982 was a loss in the amount of $1087, and that his net rental income in 1983 was a loss in the amount of $1020.50. He further alleges that because Paragraph 2.6 of the separation agreement provided that the term income "shall include . . . net rental income," such rental losses should have been deducted from his total income by the trial court when it determined the amount of child support arrearages for 1982 and 1983.

The defendant's claim, however, was not raised in the trial court. Although the plaintiff disclosed her calculations of the defendant's income in both 1982 and 1983 in her trial court briefs in support of her motion for contempt, the defendant never alerted the court to the claim that she failed to account for his net rental losses in such calculations.[9] Nor did the defendant ever argue to the trial court that such net rental losses *should* be subtracted from his total income in both years. The trial court, therefore, was not apprised of the defendant's argument now claimed on appeal. "Since this claim was not raised in the trial court and since there is absolutely no indication in the record of the type of exceptional circumstances necessary to justify this court's departure from the well-settled rule that claims of error not raised distinctly at the trial will not be reviewed on appeal, we decline to consider this claim of error." *MacFarlane* v. *MacFarlane,* 178 Conn. 406, 416, 423 A.2d 109 (1979); see Practice Book § 4185.[10]

## IV

In his final claim of error, the defendant claims that the trial court erred by including $3217.42 in its com-

---

[9] In her brief in support of her motion for contempt, the plaintiff provided that her calculations of the defendant's total income in 1982 was $154,585, and $145,930 in 1983. The trial court subsequently found that the defendant's income was $154,585 in 1982 and $139,339.60 in 1983.

[10] In declining to review the defendant's claim of error, we note that his claim does not involve a simple calculation error that can be readily corrected by this court. Cf. *Swayze* v. *Swayze,* 176 Conn. 323, 336–37, 408 A.2d 1 (1978). Although the agreement provided for income to include "net rental income," that term is not defined in the agreement. The agreement, therefore, did *not* provide that "net rental income" for purposes of computing income for child support payments would be whatever figure was designated as net rental income on the defendant's tax return. See *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 648, 153 A.2d 828 (1959). The trier of fact, if properly apprised of the defendant's claim, would have had to determine the meaning of "net rental income" as used by the parties in the agreement.

putation of his income for 1983 without any evidence to support its conclusion.[11] The trial court found that the defendant had reported $22,765 as joint income from "pensions and annuities, including rollovers" on his and his new wife's joint tax return for 1983. It found that $16,220.17 of that sum was directly attributable to a distribution from the defendant's thrift investment plan. The source of the remaining $6434.83 was unaccounted for. In its supplemental memorandum of decision, the trial court concluded that one-half of such amount, or $3217.42, should be attributed to the defendant's income "in the absence of any evidence offered by him to the contrary." The defendant claims that the trial court erred in including *any* of this amount in his 1983 income when there was no evidence to support such a finding. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The record indicates that evidence was introduced which established that the defendant had filed a joint tax return with his new wife in 1983, and that $22,765 was reported as joint income received from pensions and annuities. The defendant did not offer any evidence as to the source of $6434.83 of that sum. Absent direct evidence to the contrary, the court's determination that one half of this amount should be attributed to the defendant was an inference drawn from the facts established as evidence. As an inference of fact, it is not

---

[11] The defendant originally claimed that the trial court erred in including $6434.83 in its computation of his income without evidence to support such a conclusion. That sum was added to the defendant's income in the trial court's original memorandum of decision. In response to a motion for articulation, however, the trial court recognized that "counsel have agreed that there was no evidence as to the source of the funds, i.e., whether Mr. Goold, or his new wife, produced this income." On this basis, the trial court modified its decision to include $3217.42, one half of the disputed amount, in the defendant's income for 1983.

reversible unless the trial court could not *reasonably* have arrived at the conclusion that it reached. *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 275, 439 A.2d 314 (1981). A judgment rendered will therefore not be reversed " ' "unless a conclusion has been reached, or an inference drawn, from a fact, many facts, or the facts found, which affects the judgment rendered in material degree and is legally or logically inconsistent with that or those facts, or is so illogical or unsound, or so violative of the plain rules of reason, as to be unwarranted in law." ' " *Edens* v. *Kole Construction Co.,* 188 Conn. 489, 497–98, 450 A.2d 1161 (1982). We find that the trial court's finding that one half of the $6434.83 should be attributed to the defendant's income was a factual finding based upon an inference reasonably drawn from the evidence. On the basis of the record before us, we cannot say that the conclusion reached by the trial court was not reasonable and logical. See *Leabo* v *Leninski,* 182 Conn. 611, 615–16, 438 A.2d 1153 (1981); *Dunn* v. *Santino,* 139 Conn. 352, 355, 93 A.2d 726 (1952).

In reaching this conclusion, we note that the actual portion of that sum which was the defendant's income was a fact which was exclusively within his ken. He could have, but did not, provide evidence which could establish what portion of the reported income was actually his, and what portion was attributable to his new wife. The record further reflects that he refused to comply with the plaintiff's repeated requests to account for the source of such sum. The defendant, therefore, cannot now claim on appeal that there was no direct evidence contained in the record which would support the trial court's finding.

V

In her cross appeal, the plaintiff alleges that the trial court erred in including only a portion of the 1983 thrift

investment plan distribution in the defendant's 1983 income. The trial court included as income only that portion of the distribution which represented the profit realized by the defendant.[12] The plaintiff asserts that because Paragraph 2.6 of the separation agreement provides that the term "income" includes "all income from . . . pensions [and] annuities," the *total* amount of the distribution, or $16,220.17, should have been considered income for purposes of determining child support.

The trial court's memorandum of decision fails to disclose the reason for the court's determination that only the profit realized from the thrift investment plan should be considered income. The burden of securing an adequate record for appellate review of an issue presented on a cross appeal rests with the cross appellant. *Niles* v. *Niles,* 9 Conn. App. 240, 249, 318 A.2d 932 (1986). The plaintiff in this case did not seek to have the trial court articulate its decision pursuant to Practice Book § 4051. See *Barnes* v. *Barnes,* 190 Conn. 491, 493, 460 A.2d 1302 (1983); *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982). "Where the factual basis of the court's decision is unclear, proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." *Holmes* v. *Holmes,* 2 Conn. App. 380, 383, 478 A.2d 1046 (1984). Because the trial court did not delineate the factual basis for its conclusion in its memorandum of decision, and because the plaintiff has failed to secure an adequate record, we decline to view as clearly erroneous

[12] In its memorandum of decision, the trial court stated: "In 1983, the defendant received a distribution of $16,330.17 from the General Foods Thrift Investment Plan. In 1979, Mr. Goold had contributed $5184 and his employer $4406.40 for a total of $9590.40. His profit in 1983 is the difference between the amount distributed and the contributions, or $6739.77 ($16,330.17 minus $9590.40)."

the trial court's determination to allocate only a portion of the thrift incentive plan as income. See *Caracansi* v. *Caracansi,* 4 Conn. App. 645, 648–49, 496 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56 (1985); *Holmes* v. *Holmes,* supra.

## VI

In her next claim of error, the plaintiff challenges the trial court's treatment of the child support payments made by the defendant for the support of one of the parties' children after that child reached the age of eighteen. The parties' daughter, Jennifer, became eighteen years of age on August 28, 1983. The trial court found that the defendant had paid $2416.68 in child support for Jennifer during the four months following her eighteenth birthday. In computing the amount of the child support arrearage owed by the defendant in 1983, the trial court credited the defendant with this amount.[13]

Paragraph 2.3 of the parties' separation agreement provides that the defendant's obligation to pay child support would continue "until said child . . . attains the age of 21 years . . . ." The trial court noted that despite this provision, support payments made for a child over the age of eighteen were not enforceable through a contempt proceeding. See *Kennedy* v. *Kennedy,* 177 Conn. 47, 411 A.2d 25 (1979). Both parties acknowledge that the separation agreement was

---

[13] In its supplemental decision filed in response to an order from this court, the trial court stated that $2416.68 was paid by the defendant as post-majority support for Jennifer. It added: "In order to clarify this point further, I should point out that I credited this amount, $2416.68, to Mr. Goold because it had been paid for the benefit of someone who had reached her eighteenth birthday, and was therefore not enforceable through the plaintiff's contempt motion. In other words, I determined what Mr. Goold should have paid for child support over the year in question, what he actually paid, and then ordered that he pay the balance to Mrs. Goold, but credited him also with the above amount paid on behalf of Jennifer for the four months after her eighteenth birthday."

signed in 1976, prior to the enactment of the amendment to General Statutes § 46b-66 which allows the enforcement of written agreements providing for the support of a child beyond the age of eighteen in a contempt proceeding.[14] *Hunter* v. *Hunter,* 177 Conn. 327, 416 A.2d 1201 (1979); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 488 A.2d 1290 (1985). Because the court found that it could not enforce the postmajority support payments provided for in the agreement via the contempt proceeding, it credited the defendant for the $2416.68 paid by him and subtracted this amount from the total amount of arrearage owed. The plaintiff alleges that the trial court erred by crediting the defendant with this amount.

The plaintiff, however, has failed to brief this argument adequately, and her claim therefore evades meaningful appellate review. Counsel has not researched the issue or formulated any legal argument thereunder. See *In re Juvenile Appeal (85-3),* 3 Conn. App. 194, 197, 485 A.2d 1369 (1985). We therefore deem this issue to be abandoned. See *McGaffin* v. *Roberts,* 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *In re Nicolina T.,* 9 Conn. App. 598, 600 n.3, 520 A.2d 639 (1987); *In re Juvenile Appeal (85-3),* supra, 197-98; *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 682 n.2, 474 A.2d 810 (1984).

## VII

In her final claim of error raised in her cross appeal, the plaintiff alleges that the trial court erred in refusing to award her counsel fees. The trial court refused

[14] General Statutes § 46b-66 was amended in 1977 to include the following: "If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree . . . ."

to order the defendant to pay the plaintiff's counsel fees because he found that she "will have sufficient funds to pay her own attorney."

Ordinarily, the trial court must consider the statutory criteria provided in General Statutes §§ 46b-62 and 46b-82[15] in determining whether to award counsel fees; *Turgeon* v. *Turgeon,* 190 Conn. 269, 280–81, 460 A.2d 1260 (1983); and its discretion in awarding such fees is rarely disturbed. Id., 281. In this case, however, the parties had provided for the payment of counsel fees in their separation agreement. Paragraph 11.3 provided that "[i]n the event that it shall be determined by a court of competent jurisdiction that either party shall have breached any of the provisions of this Agreement or of any court decree incorporating by reference or otherwise this Agreement . . . the offending party shall pay to the other party reasonable attorney's fees . . . ."

The trial court, therefore, should not have based its decision to refuse to award counsel fees upon the financial ability of the plaintiff to pay for her own attorney. Rather, the court should have relied on the relevant provisions of the separation agreement. Although the court did not find that the defendant was in contempt, it did find that an arrearage was owed by the defend-

---

[15] General Statutes § 46b-62 provides in pertinent part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

General Statutes § 46b-82 provides in pertinent part: "In determining whether alimony shall be awarded . . . the court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

ant for past due back support. It made no finding, however, as to whether the failure of the defendant to pay past due child support was a breach of the separation agreement. It is necessary, therefore, to remand this case to the trial court for a determination of whether there was a breach of the separation agreement, and, if so, for a determination of the amount of reasonable attorney's fees to be awarded to the plaintiff.

There is no error on the appeal; there is error in part on the cross appeal, the judgment is set aside as to the refusal to award attorney's fees and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.