[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The child support arrearage owed to the plaintiff, Heather Pearson (hereinafter "the plaintiff")for the 167 weeks prior to June 18, 2002, when the court established orders for current child support, is in dispute. The court had previously established paternity for the minor child, Jordan Pearson, born on December 17, 1998. The plaintiff and the defendant, John Gregor, (hereinafter "the defendant") agreed to child support orders in accordance with the child support guidelines: $91 weekly, medical and dental orders, 37% of the unreimbursed medical and dental and 37% of the unreimbursed work related day care.
The plaintiff seeks an arrearage finding of $12,692, which the parties have stipulated would be the proper arrearage based upon the parties' ability to pay or earning capacity during the past due time period. However, the defendant claims credits pursuant to the parties' written agreement and oral understanding for child support starting in March, 1999. The payments to the plaintiff were made by the paternal grandmother, Donna Gregor (hereinafter "the grandmother") and the in-kind contributions for the benefit of the child were made by the defendant and the grandmother. The defendant claims that he was a full time student and he had no ability to support the child so his mother provided the financial support. He stated that this support was a loan which he intends to repay.
The plaintiff claims she received no financial benefit from the day care provided by the defendant and the grandmother and furthermore that any credit for payments or in-kind contributions made by the grandmother is not supported by Connecticut law.
 I
The plaintiff claimed the arrearage of $12,692, but agreed to certain credits: $200 in cash and $135 in money orders paid to her by the CT Page 13139 defendant. In her testimony she also indicated a willingness to give additional credits for diapers and formula but never quantified it and counsel for the state argued that such a credit was improper.
In support of the defendant's claims the grandmother testified that she had an oral agreement with the plaintiff and the defendant and that she entered into a written agreement with both parties, when the plaintiff returned to work. (Defendant's Exhibit 3). The agreement was dated March 30, 1999, but was signed by the plaintiff, the defendant, and the grandmother and notarized on April 29, 1999. The agreement stated: "This letter is to provide the child support agreement between John Gregor and Heather Pearson with respect to their son Jordan;" that day care was to be provided by the defendant and the grandmother Monday through Friday from 3:30 to 5:30 p.m., and the value of that day care was $30 weekly; that " (d)iapers, formula and food are to be provided," valued at $30 per week; and that " (t)otal child support is $60.00 per week."
The grandmother testified she made this agreement and expended the money in behalf of the minor child because her son, the defendant, was a full time college student and she believed it was in the best interests of her grandson that his father complete college, so that he could "properly support him for the rest of his life." She stated that she expected reimbursement from the defendant. She testified that the defendant has resided with her since he was born. She further testified that she claimed the defendant as a dependant on her tax return, including the time when he was a full time student after the birth of Jordan.
The plaintiff returned to work when the child was six weeks old, or March 30, 1999, and day care was provided by the grandmother's day care provider, who was identified as Lois (Lois Lavoie on Exhibit 3.) The grandmother testified that the parties wanted Lois to take care of Jordan and that she had agreed to accept the child, provided he would be picked up at 3:00 p.m. with her (the grandmother's) children, who also were in her program. The grandmother testified that either she or the defendant picked him up at day care, and the plaintiff picked him up at their house, after work between 5:00 and 6:00 p.m. The grandmother testified that the value of this day care was $30 weekly, as stated in the parties' written agreement. The defendant claims a credit for the day care for 167 weeks which totals $5,010. This total does not include an adjustment for the one or two weeks each year the plaintiff was on vacation
The grandmother testified that the parties had entered into the written agreement in support of plaintiff's attempt to obtain state assistance for her day care costs. The grandmother testified that the assistance CT Page 13140 "was never available to us."
She further confirmed that she provided the "diapers, formula and food" required under the agreement when Jordan was at the day care and at her own home. Although the agreement set the value of this contribution at $30 weekly, she testified that the actual cost was $20 a week for only 112 weeks or $2,140, because Jordan was potty trained and documented no additional costs after that. In addition the grandmother presented claims for clothing purchases for the minor child totaling $1,306. Canceled checks signed by the grandmother, payable to various stores with Jordan's name in the memo line were entered into the record as evidence of her payments for clothing. Other canceled checks signed by the grandmother payable to the plaintiff totaling $260 were offered into evidence, in support of the claim for credit for direct payments to the plaintiff.
The grandmother testified that she expected defendant to pay her back "over time" that she didn't expect a large payment from him. Defendant testified that he intended to repay his mother, and intended to work out a payment schedule when he finished college. He said that he would resume school in September (2002) and will have a full time position in January (2003).
The defendant also testified that he had enrolled the child in St. Christopher's, a private school, and paid the deposit and one installment. He said he asked the plaintiff to contribute but she had doubts so he is paying. In response to his request the court deviated from the guidelines on the weekly arrearage payment as long as he pays for the private school, setting the order at $9 weekly.
Plaintiff disputed the testimony that the day care provider charged her less money for day care because the child was picked up early on a daily basis. She said she was charged and she paid a flat rate of $400 a month, regardless of whether he was picked up at 3:00 or later. She said the "situation with daycare was that she (the grandmother) would pick him up on a daily basis so her son (the defendant) can see our son." She said it was not "an agreement to save money." Plaintiff did not dispute that the day care was actually provided or that the expenses for diapers, food, formula and clothing were actually incurred by the grandmother. She offered no other testimony or explanation as to the terms of the agreement signed by the parties.
The defendant's counsel argued that if the defendant didn't get credit on the arrearage, when he finished college he would end up paying the obligation twice, to both the grandmother and the plaintiff. In argument the attorney quantified the credits at $7,823, or in the alternative CT Page 13141 deferred to the court to provide the credit.
The counsel for the state of Connecticut arguing in behalf of the plaintiff stated that granting a credit for payments made by the paternal grandmother would be unprecedented, allowing a child support obligation to be mitigated by payments from a non-liable person.
 II
The initial issue is whether in-kind contributions by the paternal grandmother and the defendant for the support of the minor child may be credited against the child support arrearage claimed by the plaintiff. The court will first consider whether in-kind (other than cash) contributions may be credited towards child support. Most of the Connecticut decisions involve a change in physical custody of the child (ren) for a period of time without a court order to modify the child support.
Our courts have recognized that ". . . situations may arise in which equitable considerations would permit a parent to credit, against past due support payments, voluntary expenditures made on behalf of the child." (Citation omitted; emphasis in original.) Goold v. Goold,11 Conn. App. 268, 272-73, 527 A.2d 696, cert. denied, 204 Conn. 810,528 A.2d 1156 (1987). "[T]he circumstances of each individual case are considered in determining whether credit can be allowed. . . . In all such cases, however, courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." (Citation omitted.) Id., 273. The court continued. . . there is no general rule as to when circumstances require the allowance of such credit, . . ." Goold, Supra, 273. The court in Goold cited two circumstances besides a motion to modify as a basis to allow such in-kind credit (1) a separation agreement provided for a modification under certain conditions; or (2) the mother in "some manner consented to accept the fathers' direct support of the child as an alternative method of paying child support,"[1] Goold, at 275, (1987). In those circumstances equitable relief is warranted. See also Zofcak v. Zofcak, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. FA 81 0192716 (November 23, 1992, Bassick, J.).
The Superior Courts have applied these principles and allowed credits in limited circumstances such as in Tsahirides v. Tsahirides, Superior Court, Judicial District of Stamford, Docket No. 94-0141925, (January 22, 1998) in which the court found "compelling circumstances requiring equitable relief." The court refused to enforce the pendente lite orders because in kind care and support of the minor children by the father CT Page 13142 exceeded the child support order, during a period of time when the children lived with him, were in his full care and custody, and the mother was ill and unable to provide that support. Additionally, the Superior Court applied the principles of equitable estoppel to deny a contempt finding when a defendant failed to pay child support but the parties had "co-signed a private school tuition agreement for a second school year." Flint v. Flint, Superior Court Judicial District of Waterbury, Docket No. 86 0075888s (May 4, 1998.)
In Bieluch v. Bieluch, 199 Conn. 550, 509 A.2d 8 (1986), the Supreme Court affirmed the trial court's decision denying credit for voluntary expenditures. However the decision of the trial court was fact based. The court found that the claim of offsetting payments was supported only by the defendant's testimony. "The trial court was able to observe the defendant's demeanor in making these statements and to judge his credibility. It was within the court's discretion to find that his unsupported allegations were insufficient to warrant a reduction in his arrearages." Id., 556.
It is a well settled legal principle that the "trier is the judge of the credibility of all of the witnesses and the weight to be given their testimony." Griffin v. Nationwide Moving and Storage Co., 187 Conn. 405, f. 422, 446 A.2d 299 (1982). The trier of fact has the right "to accept part and disregard part of the testimony of a witness." Rood v. Russo,161 Conn. 1, 3, 283 A.2d 220 (1971), Barrila v. Blake, 190 Conn. 631,638, 461 A.2d 1375 (1983). The court, as the trier of fact, must determine the credibility of witnesses and the weight it will give to testimony presented." Id.
The court finds there is a basis in Connecticut law for allowing in kind contributions to be credited to a child support obligation. In the present case there is substantial evidence of consent to an alternate arrangement in the form of a written agreement signed by the parties and the grandmother. There is no question that the plaintiff consented to the in-kind support. The plaintiff never denied entering into the agreement with the defendant and the grandmother, instead she denied that the day care arrangement had value to her. The parties in fact operated under the terms of the letter agreement of March 30, 1999, for almost three years. The court finds that the plaintiff by her actions since 1999 and by her signature on the agreement has consented to the "direct support of the child as an alternative to paying child support" consistent with Connecticut law. Goold, supra, 273.
As to whether the contributions of the grandmother will be credited is a case of first impression, although the court takes judicial notice that CT Page 13143 the Family Support Magistrate Court routinely does not inquire of an obligor as to the source of funds when payments are made pursuant to a child support obligation. This includes the regular weekly payments and the lump sums paid pursuant to court orders including amounts ordered as purges when the court makes a finding of contempt.
This court agrees with the defendant that the payments by the grandmother under the written agreement may be credited. The state cannot dictate the sources of funds when child support is due. In this matter child support was owed and paid pursuant to the parties' agreement.
The plaintiff's acceptance of the grandmother's monetary and in-kind support since 1999 created a reliance on the terms of the agreement. "Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) LaSalle National Bank v.Freshfield Meadows LLC, 69 Conn. App. 824, 838, ___ A.2d ___ (2002).
The court finds credible the defendant's testimony that the funds spent by the grandmother are a loan and he intends to pay her back. Therefore, the defendant would have incurred not only an obligation to pay the child support, but an obligation to pay back his mother as well, on the assumption her contributions to his child support obligation would count towards his debt. The defendant relied on the consent of the plaintiff as to the payment of child support, and would be prejudiced if the court did not give him the credit. For the court to hold otherwise would result in the defendant paying the same amount twice, at least as to the expenditures.
Lastly, although the value of the contributions made by the grandmother and the defendant against the support owed was stipulated in the written agreement, the court is not bound by this agreement. "Parties have a statutory right to enter into agreements affecting their children, a trial court has the power to reject or modify such agreements if it determines that such agreements are not equitable. . . . It is the duty of the court to enter such orders as it believes are in the best interests of the children, and it is a responsibility that cannot be delegated or abrogated by agreement of the parties." (Internal quotation marks omitted.) Miller v. Miller, Superior Court, judicial district of CT Page 13144 Hartford, Docket No. FA 94 05329665 (January 22, 2002, Dyer, J.). Issues of credibility obviously impact the application of the above legal principles.
Although the court has found that the contributions of the defendant and the grandmother other than support should offset the arrearage, the court has the discretion to determine the value of those contributions and apply that amount against the arrearage owed by the defendant. The court finds the parties' agreement to be in the best interests of the minor child. The court finds it significant that the defendant has now agreed to pay an arrearage calculated in accordance with the child support guidelines, resulting in a greater amount than provided in the agreement.[2] The court would have made that adjustment had he not agreed to it.
The credit requested for the day care does not represent an expenditure by either the defendant or the grandmother. While the court finds a credit is appropriate, the court also finds that $30 weekly is inequitable, as it represents an amount almost one-half of the average weekly child support requested for that time period ($76 week for 167 weeks). The court finds it equitable and reasonable to modify the credit for the day care to $10 a week. The court orders a credit for 160 weeks, which excludes seven weeks of vacation for the plaintiff, for a total credit of $1,600. The court finds that the grandmother testified credibly as to the value of the formula, diapers and food provided while the child was at day care and at her home, testimony which was not controverted at trial, therefore orders a credit of $2,140, noting this is a credit also provided in the written agreement. The court denies the request for credit for clothing. Those purchases are outside the parties' written agreement and there was no proof that the plaintiff agreed orally that they would be credited. The court also denies the request for credit of the direct payments from the grandmother by check. Again there was no evidence of an agreement that those amounts were child support. In the absence of such an agreement, there is insufficient proof that those payments and expenditures were child support rather than a gift by the grandmother for the benefit of her grandchild.
Based on the foregoing the court orders that defendant be granted a total credit of $4,075 (including the $335 to which the plaintiff has agreed) against the arrearage and accordingly finds plaintiff's arrearage as of June 18, 2002 is $8,617.
Sandra Sosnoff Baird Family Support Magistrate CT Page 13145