DOROTHEA OLMSTEAD *vs*. JOSEPH S. MURPHY.

Middlesex. November 19, 1985. — March 3, 1986.

Present: KASS, WARNER, & FINE, JJ.

*Divorce and Separation,* Attorney's fees. *Attorney at Law,* Compensation.

An award of $2,000 as legal fees pursuant to G. L. c. 215, § 34A, to a wife who had secured a contempt judgment against her former husband for failure to make support payments was set aside, where it appeared that in making the award the judge placed undue emphasis on the relation between the fee sought, $10,828, and the recovery, $13,088. [666-667]

In setting aside an award of attorney's fees pursuant to G. L. c. 215, § 34A, to a wife who had secured a contempt judgment against her former husband, this court established the fee to be recovered rather than remanding the matter to the trial court judge, where the full transcript of the fee hearing was before this court, where a remand would necessitate further legal expenditures, where the defendant's ability to pay was close to the margin, and where the trial judge who set the fee did not preside over all steps of the proceedings in the trial court. [667-668]

LIBEL for divorce filed in the Probate Court for the county of Middlesex on October 10, 1972.

A complaint for contempt, filed on January 20, 1983, was heard by *Vincent F. Leahy,* J.

*Dorothea Olmstead,* pro se.

*Joseph S. Murphy,* pro se.

KASS, J. In St. 1982, c. 282, the Legislature provided that a person who secures a contempt judgment for failure to make support payments may recover reasonable legal fees attendant to the chase.[1] In this case a Probate Court judge entered a

---

[1] Statute 1982, c. 282, added the following to G. L. c. 215, § 34A. "In entering a judgment of contempt for failure to comply with an order or judgment for monetary payment, there shall be a presumption that the plaintiff is entitled to receive from the defendant, in addition to the judgment on monetary arrears, all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation and prosecution of the com-

contempt judgment establishing arrearages which totalled $13,088. The judge awarded legal fees of $2,000. Counsel for Dorothea Olmstead, who was the plaintiff in the contempt proceedings, had asked for legal fees of $10,828. This appeal, taken by Olmstead from an amended judgment, concerns the amount of legal fees she was allowed to recover. A transcript of the hearing on the fee question is before us.

Although the recovery of fees component in G. L. c. 215, § 34A, is relatively new, some familiar principles apply to its application. Setting the amount of a reasonable attorney's fee lies largely in the discretion of the trial judge. *Darmetko* v. *Boston Housing Authy.*, 378 Mass. 758, 764 (1979). *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979). *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 16-17 (1980). *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 (1985). A judge's first-hand knowledge of the work performed and going rates is a weighty factor. *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982). See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 378 (1985). The exercise of discretion is not, however, beyond appellate review. See *Pemberton* v. *Pemberton, supra* at 16-18; *Robbins* v. *Robbins, supra*. The factors to take into account are discussed in *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933), *First Natl. Bank* v. *Brink,* 372 Mass. 257, 265-267 (1977), *Darmetko* v. *Boston Housing Authy., supra* at 764, *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 576 (1980), and *Robbins* v. *Robbins, supra* at 540-544.

Of those factors, the time which Olmstead's counsel spent, the reasonableness of that time in relation to the nature of the case, and the reasonableness of counsel's hourly rate are the most relevant. This is not a case (and Olmstead does not so argue) in which responsibility, novelty, difficulty, unusal skill, standing at the bar, or spectacular results achieved need be placed in the equation.

plaint for contempt. The contempt judgment . . . shall include reasonable attorney's fees and expenses unless the probate judge enters specific findings that such attorney's fee and expenses shall not be paid by the defendant."

The 1982 act also inserted in § 34A a paragraph prescribing interest payable on contempt judgments. See *Kennedy* v. *Kennedy,* 20 Mass. App. Ct. 559, 562-563 (1985).

The amount recovered (a factor upon which, the record suggests, the judge may have relied too heavily) is an unreliable guide in this sort of case. Recovery of counsel fees from the opposing side is not the norm in American litigation. Rowe, The Legal Theory of Attorney Fee Shifting: A Critical Overview, 1982 Duke L.J. 651 (1982). Their imposition by G. L. c. 215, § 34A, reflects legislative recognition that the legal expense of enforcing court orders permitted their evasion, to the disadvantage of economically dependent spouses, often wives with children, and to the disadvantage of the public. If a husband fails in his support obligations, the public frequently assumes the economic burden. Section 34A requires the Probate Court judge to make specific findings if legal fees and expenses are *not* to be paid by the errant spouse. We may take that requirement as a measure of the Legislature's concern that the statute be an effective goad to compliance with support payments. In the case before us, for example, the Department of Public Welfare has had to assist Olmstead and her child. When the public, as here, has a particular interest in the vindication of a legal right, the market value of legal services, based on a reasonable expenditure of time and a reasonable time charge, should not be automatically discounted because that value is high in relation to the amount recovered. See *Stratos* v. *Department of Pub. Welfare,* 387 Mass. 312, 323 (1982); *Torres* v. *Attorney Gen.,* 391 Mass. 1, 15-16 (1984); *Johnson* v. *Georgia Highway Exp., Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974); *Furtado* v. *Bishop,* 635 F.2d 915, 918-920 (1st Cir. 1980). Moreover, a purpose in charging legal fees to the defaulting spouse is to make default unattractive and dangerous. In that sense the statute serves a purpose similar to the multiple damages and legal fee components in c. 93A recoveries. See G. L. c. 93A, §§ 9 & 11. To be sure, the court may take into account that time spent was wholly disproportionate to the interests at stake. *Stratos* v. *Department of Pub. Welfare, supra* at 323. See *Draper* v. *Town Clerk of Greenfield,* 384 Mass. 444, 456-457 (1981).

In this case, the ex-husband, Murphy, adopted maneuvers calculated to maximize the legal fire power which Olmstead

became obliged to employ. (Although Murphy's residence in New Jersey appears to have been unrelated to any tactical purpose, it complicated the litigation picture.) Murphy first represented himself, then, in sequence, engaged counsel, discharged that lawyer, and hired new counsel, and later retained still other counsel (a third). (For a postjudgment hearing on fees and on this appeal, Murphy resumed his own defense.) Those changes occasioned delay and a repeated refreshing of preparation for trial. There were multiple continuances. Murphy responded unwillingly to discovery and only under pressure from Olmstead.

Review of the fee hearing discloses that the judge was sorely troubled by the high fee sought ($10,828) in relation to the recovery ($13,088) and by his sense that more legal effort was expended than the case inherently warranted. The judge's observation that, "I know a good lawyer that could have done this whole thing in five hours" was probably hyperbolic, but reflects his unease that legal work had expanded to fill the time available for its completion. "Gut feelings," to which the judge referred in the course of the hearing, doubtless reflect valuable experience, but are an inadequate basis for review. As was true of the court in *Torres* v. *Attorney Gen.,* 391 Mass. at 16, we are unable to find a reasonable basis for chopping the legal fees down to $2,000.

Revision of the order for fees is appropriately the province of the trial court judge. In the peculiar circumstances of this case, where the full transcript of the fee hearing is before us, where a remand would push the parties to further legal expenditures, and where the ability of Murphy to pay is close to the margin, we undertake, in the interest of bringing these proceedings to a close, to establish the fee to be recovered under G. L. c. 215, § 34A. *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 951 (1st Cir. 1984). Compare *Robbins* v. *Robbins,* 19 Mass. App. Ct. at 544. Nor did the judge who set the fee preside over all steps of the proceedings in the trial court. His perspective, therefore, is not greatly different from ours. Pinpoint accuracy is not possible in any event. Cf. *Hayden* v. *Hayden,* 326 Mass. 587, 595-596 (1950); *Hanner* v. *Classic Auto Body, Inc.,* 10 Mass. App. Ct. 121, 124 (1980).

Olmstead's lawyer logged 143 hours. We have pruned away fifty-one hours as identifiably duplicative or too generously expended, given the problems confronted. More time, for example, was lavished on trial memoranda and preparation conferences than the relatively simple factual situation warranted. Conference time and telephone conference time ran very high, considering the relatively small number of witnesses. *Robbins* v. *Robbins,* 19 Mass. App. Ct. at 541. Some gauging of the amount of discovery in relation to the amount being pursued may be expected of lawyers. That an adversary will pay the bill is not an occasion for letting the meter run. We share the judge's expressed concern that somehow more effort was expended, however faithfully, than the difficulty of the case warranted, notwithstanding the peculiar obstacles erected by the defendant. See *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d at 952-955. To account for that general factor, we cut another twenty hours, leaving seventy-two. That figure takes into account the multiple court appearances and renegotiation time required by the appearance of successive counsel for the defendant. Defendants in these kinds of proceedings should know that they have a financial stake in avoiding continuances and other forms of delay and, above all, limiting appearances in court. We accept, as did the trial judge, the time charge of $75 per hour made by counsel for Olmstead. Applying the allowed hours, this works out to a fee of $5,400. No one has cavilled about the $103.14 in costs. The judgment shall be modified to provide for the recovery of legal fees and expenses in the aggregate amount of $5,503.14. As so modified, the judgment is affirmed.

*So ordered.*