LILLIAN F. O'SHEA KENNEDY *vs*. GEORGE D. KENNEDY.

Hampden.    September 17, 1986. — November 17, 1986.

Present: DREBEN, SMITH, & FINE, JJ.

*Attorney at Law,* Compensation. *Divorce and Separation,* Attorney's fees, Contempt. *Contempt.*

On appeal from an award of $13,274 legal fees to a wife who had secured a contempt judgment against her former husband for his failure to make support payments, the award was set aside by this court, where the probate judge had failed to make findings to support his conclusion that the wife's request of counsel fees of $41,794.69 was excessive, and where the record revealed that in making the award the judge misunderstood the policy directives underlying G. L. c. 215, § 34A. [180-182]

On setting aside an award of attorney's fees of $13,274 to a wife who had secured a contempt judgment against her former husband for his failure to make support payments, and who had requested an award of $41,794.69, this court established the fee to be recovered where, because of the numerous appeals in the case, there was an ample record before this court and a remand would not be in the interests of the parties or the administration of justice. [182-183]

PETITION filed in the Probate Court for the county of Hampden on June 8, 1972.

COMPLAINTS for divorce filed in the Hampden Division of the Probate and Family Court Department on July 10, 1980, and December 2, 1981, respectively.

After review by this court reported in 20 Mass. App. Ct. 559 (1985), further proceedings were heard by *Joseph E. Rodgers,* J.

*Jonathan Shapiro* (*William C. Newman* with him) for the plaintiff.

*Sumner D. Goldberg* for the defendant.

*Jon Laramore, Lynda G. Christian & Alison E. McCrone,* for Family Law Committee of the Boston Bar Association & another, amici curiae, submitted a brief.

FINE, J.   We deal here with the question of counsel fees under G. L. c. 215, § 34A.[1] In an action for contempt against a party for failure to obey a Probate Court support order, there is a "presumption" under § 34A that a prevailing plaintiff is entitled to "all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation and prosecution of the complaint for contempt." After finding the defendant husband, George, in contempt of such a support order, a probate judge included an award for counsel fees and expenses in a judgment of divorce after rescript. The plaintiff wife, Lillian, claims on appeal that the amount of the award is inadequate. We agree, and we set what we determine to be a reasonable fee.

The litigation between the parties has been lengthy and complicated; this is the fourth time the case has come before this court. See *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113 (1980) [*Kennedy I*]; *Kennedy* v. *Kennedy*, 17 Mass. App. Ct. 308 (1983) [*Kennedy II*]; *Kennedy* v. *Kennedy*, 20 Mass. App. Ct. 559 (1985) [*Kennedy III*]. The background facts are narrated in *Kennedy I* at 114-115 and in *Kennedy II* at 309-311. A considerable part of the effort expended by counsel for Lillian to date has resulted from the "unremitting opposition that Lillian's counsel had to face" (*Kennedy III* at 563) in their efforts to obtain adequate support for Lillian and the couple's five children.

Lillian initiated contempt proceedings in 1980 for George's failure to comply with a 1972 order for support, and a judgment of contempt entered in 1982.[2] The probate judge denied Lil-

---

[1] General Laws c. 215, § 34A, fourth par., inserted by St. 1982, c. 282, effective October 6, 1982, provides: "In entering a judgment of contempt for failure to comply with an order or judgment for monetary payment, there shall be a presumption that the plaintiff is entitled to receive from the defendant, in addition to the judgment on monetary arrears, all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation and prosecution of the complaint for contempt. The contempt judgment so entered shall include reasonable attorney's fees and expenses unless the probate judge enters specific findings that such attorney's fee and expenses shall not be paid by the defendant."

[2] George's attorney contended in oral argument and in postargument communication with this court that no judgment of contempt was ever

lian's application for attorney's fees in connection with the contempt. She appealed, claiming error in various aspects of the judge's decision, including his failure to award attorney's fees. In *Kennedy II* at 315 & n.12, we suggested that the probate judge, on appropriate motion, could reconsider the question of attorney's fees, and we pointed out that, "[a]lthough the fourth paragraph [of G. L. c. 215, § 34A, authorizing fee awards in contempt cases] was not in effect at the time judgments were entered . . ., the legislative policy behind it is an appropriate consideration on this remand." Upon remand, counsel for Lillian submitted requests for $31,897 for 588 hours of work by three lawyers over a period of five years. The judge allowed $5,300. Lillian appealed again. In *Kennedy III*, among other things, we ruled that the amount was inadequate and ordered that "[t]he matter . . . be reconsidered and a fresh award made upon findings" and that an award also be made for the appeal. We reiterated the applicability of the policy behind G. L. c. 215, § 34A, to the question of counsel fees in this case, 20 Mass. App. Ct. at 563-564 & n.9.

On remand after *Kennedy III*, Lillian sought attorney's fees and expenses in the total amount of $41,794.69 for work done through that appeal. A hearing was held, a transcript of which is before us. Mr. Newman, one of several attorneys who had been involved in the representation of Lillian, was present and referred the judge to attorneys' affidavits that had "been on file with the court for some time." In addition, Mr. Newman filed attorneys' affidavits "for the work . . . after the second appeal." In all, these affidavits set forth the experience and qualifications of three attorneys representing Lillian over a seven-year period, as well as the hours spent and the work performed by each of them. The attorneys' affidavits, based on contemporaneous records, claimed a total of approximately 698 hours at fees ranging from forty to ninety dollars per hour. The affidavit of an established Springfield attorney stated that the hourly charges were reasonable and consistent with custom-

---

entered in this case. Lillian's attorney felt compelled to respond. George's contention is simply wrong.

ary charges in the area. Prior counsel for Lillian in the domestic dispute stated in another affidavit that he had referred the case to present counsel because of the complexity of the issues; he also cited the intractability of the defendant. In addition, all of the voluminous records and briefs in the case were before the probate judge. Counsel for George told the judge that he saw no need for further evidence on prior counsel fees; as to those, the judge indicated that the time spent had been stipulated and that it was "down to those hourly rates." Mr. Newman informed the judge that the other two attorneys seeking fees could be available for an evidentiary hearing, and that he had relied on George's counsel's representation prior to the hearing "that they need not be here."

In his decision, the probate judge, "applying conservative principles," awarded Lilian $7,300 for attorney's fees for work prior to the *Kennedy III* appeal, and $3,000 for the *Kennedy III* appeal. Expenses were awarded for prior proceedings and the appeal in the amounts of $2,200 and $774, respectively. The total award on the request of $41,794.69 thus was $13,274. In his memorandum, the judge stated that he had "afforded the parties an opportunity to present evidence at a hearing . . . . There was no evidentiary hearing other than the submission of the plaintiff's affidavits . . . and . . . bills and expenses . . . ." He described the attorneys' detailed affidavits as "meager and lacking in detail and analysis." However, he stated that he did not find the hourly rates requested by the attorneys to be excessive or unreasonable. Nevertheless, after stating general principles governing awards for counsel fees, the judge concluded: "The amount of fees awarded in this judgment are the amounts the court finds reasonable in view of the amount in controversy. The counsel should have to look to their respective clients for any excess fees and expenses incurred or suffer the losses themselves due to the manner in which they litigated this case."

Much discretion is accorded trial judges in setting counsel fees; rarely are they reversed if their findings of fact are not clearly erroneous and they have dwelt on the relevant considerations. See *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538,

541, 543 (1985); *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 665 (1986); Mass.R.Dom.Rel.P. 52 (a). On what is before us in this case, reversal is justified by the judge's failure to make findings to support his conclusion that the amount requested was excessive, and by the clear indication that, misunderstanding the policy directives underlying G. L. c. 215, § 34A, he decided the case on legally untenable grounds.

We consider first the time spent by counsel and the hourly rates. See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 665. The affidavits submitted by Lillian's counsel, to which George's counsel in large part stipulated, clearly indicate that the hours for which payment was requested were actually spent in efforts related to the case. There was no finding of any unnecessary duplication of effort. The hourly rates in the affidavits are reasonable. The probate judge found that the rates were not excessive or unreasonable, and the record established that they were not above market rates in the community. In fact, they were modest. Compare *Robbins* v. *Robbins*, 22 Mass. App. Ct. 982, 982-983 (1986). The judge's comment on the insufficiency of the affidavits specifying the hours and charges is puzzling. The affidavits are based upon "contemporaneously prepared time records, probably the most important factor in arriving at a fair fee determination." *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 192, 198 (1986). The judge's further suggestion that Lillian declined the opportunity for an evidentiary hearing is also puzzling in light of the discussion at the hearing. Her attorneys offered to make themselves available, but the opportunity to cross-examine them about the content of their affidavits was declined by George and apparently felt to be unnecessary by the judge. The court was not required to hold an evidentiary hearing (*ibid.*); in the circumstances, reliance on the affidavits was appropriate and cannot be held against Lillian's attorneys.

In light of the mandatory language of the statute, and the policy underlying it,[3] the judge erred in not awarding Lillian

---

[3] General Laws c. 215, § 34A, departs from customary practice by creating a presumption that fees will be awarded. Compare cases involving the

*all* of the reasonable attorney's fees she incurred in her efforts to enforce compliance with the support orders. We indicated in *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 666, our understanding of the statutory presumption as a reflection of "the Legislature's concern that the statute be an effective goad to compliance with support payments." If attorneys are to be willing to undertake efforts to obtain enforcement of support orders, they need to know they will be fairly compensated. This is all the more so, the more recalcitrant or obstructionist the defaulting spouse. If attorneys had to look to their clients for compensation, realistically, the limited support ordered by the court would be reduced. A defaulting spouse should know that noncompliance can be costly.[4]

The presumption under § 34A can be overcome only by specific findings supporting a reduction in a request for reasonable fees.[5] The probate judge in this case failed to make such

---

setting of fees under G. L. c. 208, § 38, "in the delicate setting of matrimonial litigation" where the question of fees is usually part of a determination of a fair division of marital assets. *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 543. See *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 16-18 (1980). See also *Hayden* v. *Hayden*, 326 Mass. 587, 596 (1950); *First Natl. Bank* v. *Brink*, 372 Mass. 257, 265-266 (1977). Where the court is "charging counsel fees to a party who has in no way consented," a " 'conservative' approach" is called for. *Robbins* v. *Robbins, supra*. These principles are not directly applicable here because of the nature of contempt proceedings. Because of similar public policy considerations, see, *infra*, the analogy is to civil rights and consumer protection cases, in which courts have taken a more generous approach to the award of fees, based on the public interest in the vindication of legal rights at stake in those cases. See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 666, and cases cited; *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 323 (1982); *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 457-458 (1985).

[4] We acknowledge with gratitude the amicus brief filed by the Family Law Committee of the Boston Bar Association and Mothers United to Receive Child Support (MUSCLE) for its discussion of the interests at stake in enforcement under G. L. c. 215, § 34A.

[5] In *Kennedy III*, 20 Mass. App. Ct. at 563 n.9, we required that findings be made on remand in light of the policy behind G. L. c. 215, § 34A. Such findings should take into account the factors generally applicable in fee setting cases, see *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933); *Johnson* v. *Georgia Hy. Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974); S.J.C. Rule 3:07, DR 2-106 (B), as appearing in 382 Mass. 772

findings. What findings there are do not adequately explain what hours, activities or fees were disallowed, or the rationale behind the reduction. In fact, the record reveals that the judge relied in two respects upon improper considerations. First, he stressed that the fees requested were excessive in view of the amount in controversy. He pointed out that allowing the requested fees would result in an award of $41,794.69 on a recovery of $51,000. (With interest, a matter extensively litigated, the recovery was actually considerably higher). But " [t]he amount recovered . . . is an unreliable guide in this sort of case." *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 666. See *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 323 (1982). The effort put forth by counsel here was commensurate with the important interests at stake and the amount of opposition interposed by the defendant. To rule otherwise would be to condone and encourage obstructionist tactics. Second, the judge suggested that the attorneys could look to Lillian for fees not recovered from George. Payment by Lillian inevitably would deplete the funds available for support, a result that flies squarely in the face of the policy behind G. L. c. 215, § 34A, which shifts the financial burden of enforcement to the contemnor.

For us to remand the case for reconsideration once again would be in the interests of neither the parties nor the administration of justice. Because of the numerous appeals,[6] we are in as good a position as the trial judge, and in a better position than any other judge of the Probate Court who might be designated, to determine a reasonable award. See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 667. See also *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976). Compare *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 544. In doing so, we have considered the factors set forth in *Cummings* v. *National Shawmut Bank*, 284 Mass. 569 (1933), giving emphasis

---

(1981), subject to the policy considerations discussed in *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 666, & n.3, *supra.*

[6] In addition to the three appeals, the case also came before a single justice of this court in *Kennedy* v. *Kennedy*, No. 84-0493-CV, affirmed in *Kennedy III*, 20 Mass. App. Ct. at 561.

to certain factors in light of the legislative policies to which we have alluded. In the context of the litigation, the efforts for which fees are sought were not excessive or duplicative. The representation provided to Lillian has been persistent and skillful.[7] George fought counsel's efforts at every turn. The over-all result has been successful, both for Lillian individually and for the public. Legal principles in matters of some importance have been established in the various appeals.

We, therefore, set the fees and costs in the amounts requested and documented. These total $41,794.69 for the work through the *Kennedy III* appeal and $7,067.50 for the representation in the instant appeal, with interest to be calculated at the rate of six percent on the amount which should have been awarded, $41,794.69, from the date of the lower court's judgment on January 23, 1986. See *Robbins* v. *Robbins*, 22 Mass. App. Ct. at 984; G. L. c. 235, § 8; G. L. c. 107, § 3. These sums are added to the amount subject to the attachment of the defendant's pension, with the total of outstanding attorney's fees and arrearages payable from the pension and from any other of the defendant's assets at a rate to be "set at the maximum of [George's] reasonable capacity to pay . . . within a sensibly finite period of time." *Kennedy III*, 20 Mass. App. Ct. at 562. Any proceedings necessary to enforce payment are to be brought in the Probate Court.

*So ordered.*

---

[7] In addition to Mr. Newman, Attorneys Wendy Sibbison and Marla Ruth Allisan represented Lillian.