Submitted on record and briefs July 18, 1996, reversed and remanded
March 26, 1997

In the Matter of the Marriage of

Rolland Alan FORRESTER,
*Respondent,*

*and*

Linda Ann FORRESTER,
nka Linda L. Bates,
*Appellant,*

*and*

DEPARTMENT OF HUMAN RESOURCES,
*Respondent.*

(83 0045; CA A88235)

936 P2d 388

Kathryn G. McNannay filed the briefs for appellant.

Edward L. Daniels filed the brief for respondent Rolland Alan Forrester.

Mary H. Williams, Assistant Attorney General, waived appearance for respondent Department of Human Resources.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Riggs, P. J., dissenting.

## LANDAU, J.

Mother initiated this proceeding to establish and collect from father a child support arrearage. The principal issue is whether father and mother agreed that, in lieu of father paying mother child support as required by their dissolution judgment, father would pay mother's credit card obligations, and, if so, whether their agreement is enforceable. An administrative law judge (ALJ) held that such agreements are not enforceable unless reflected in a modification of the dissolution judgment by the court, and he established father's arrearage accordingly. The trial court reversed and credited father's arrearage to the extent of father's payments on mother's credit card debts. We reverse the trial court and remand with instructions to enter judgment reflecting an arrearage that does not credit such payments.

The original dissolution judgment was entered in 1983. It awarded custody of the parties' child to mother and required father to pay child support of $200 per month until their child turned 18. At the time of the dissolution judgment, mother had accrued approximately $3,700 in credit card obligations. The parties agree that the debt was incurred by mother after the parties separated but before the entry of the dissolution judgment. There is no evidence of the nature of the purchases that created the credit card debt.

Shortly after the dissolution, father received notice that payments were not being made on mother's credit card obligations. Mother contacted father and asked him to take over the payments on the credit card. Father verbally agreed to do so. At this point, the parties' versions of the events that followed vary.

Father testified that after he had been making the payments on the credit card debt "for some time," he suggested to mother that he continue to make the credit card payments, but in lieu of his child support payments. He testified that mother agreed and that the parties decided that, in exchange for father paying the credit card bill, mother would offset father's credit obligation in the amount of $5,000. For approximately the next three years, father paid the credit card debt. During those years, and the eight years

that followed until this proceeding was initiated, father also voluntarily incurred a variety of expenditures on behalf of the child, including the purchase of a car, the payment of car insurance premiums and the purchase of clothing.

Mother testified that, although she did ask father to pay the credit card debt, she never intended that those payments would substitute for child support. She explained that she wanted father to pay the credit card debt because those obligations were incurred before the parties were divorced and because she had not sought spousal support in the dissolution. She further explained that she did not complain about father failing to make child support payments "because I didn't want anything to happen to the relationship between [the child] and him," and because father was unemployed on a number of occasions.

In October 1993, the child turned 18. Shortly after that, mother initiated this proceeding, contending that father owed approximately $11,900 in unpaid child support over a ten-year period. Father requested an administrative hearing to contest the amount of arrearage, contending that his credit card payments, along with various other expenditures made on behalf of the child, must be credited against his arrearage. After a hearing, the ALJ found that, during the 123-month period from August 1983 through October 1993, father's child support obligation totaled $24,600 and that father had paid to mother $12,700, plus four cash payments of $75 delivered by the child to mother. The ALJ concluded on the basis of those facts that father's arrearage totaled $11,600. The ALJ gave no credits for any payments on the credit card debt or other expenditures, holding that he was obligated to enforce the dissolution judgment as entered, because the judgment had not been modified.

Father appealed to the circuit court. ORS 416.427. The trial court found that father's arrearage totaled only $3,300. The court made no findings as to the method by which it arrived at that figure, but in a brief letter opinion it suggested that it awarded father credit for any payments that could be documented. Father since has paid the $3,300. Mother appeals, contending that the arrearage should

include an additional $8,005.59.[1] According to mother, the ALJ was correct in concluding that, unless a dissolution judgment ordering the payment of child support is modified by a court or authorized agency, that judgment must be paid according to its terms. She contends that she never agreed to substitute credit card payments for child support. In any event, she contends, such agreements are unenforceable, as this court has held on a number of occasions. She further argues, again in accordance with numerous decisions of this court, that, even if the credit card payments may be credited against father's arrearages, the other voluntary payments may not be treated in that fashion. Father responds that there was indeed an agreement to substitute credit card payments for child support and that such agreements should be enforceable. He contends that all of mother's authorities are not to the contrary, because none involved an express agreement made before the substitution of one form of payment for another.

■      We first address the parties' dispute as to the credit card payments. We need not decide whether the parties did enter into such an agreement, for, even if they did, such an agreement is not enforceable, as we have held many times. ORS 107.135(6) provides that a dissolution judgment requiring the payment of child support

"is a final judgment as to any installment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, *and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money*, either for minor children or the support of a party, which has accrued prior to the filing of such motion. However, the court may allow a credit against child support arrearages for periods of time, excluding reasonable visitation unless otherwise provided by order or

---

[1] Crediting that amount leaves a total arrearage that falls approximately $300 short of what the ALJ found father owed. Mother does not explain the discrepancy, but, because she asks for only $8,005.59, we do not consider whether father's arrearage may, in fact, be larger than that.

decree, during which the obligated parent has physical custody of the child with the knowledge and consent of the custodial parent."

(Emphasis supplied.) By its terms, the statute provides that, if installments of child support have accrued before a motion to modify is made, they become part of the dissolution judgment and are beyond the power of the court to modify, subject only to the exception of allowing credit for a noncustodial parent's actual custody of a child. Thus, agreements between the parties as to the terms of the support obligation cannot be enforced by the court as to installments that already have accrued.

We addressed the issue first in *Starzinger v. Starzinger*, 82 Or App 96, 727 P2d 168 (1986), in which a dissolution judgment required the father to pay $100 per month to the mother for child support. The father's payments were, however, "sporadic." The mother agreed not to seek enforcement of the judgment or to file contempt proceedings against the father for his continuing failure to pay support if he would give up his visitation rights. The father agreed. For the next 11 years, the father did not visit the children, and the mother did not demand support. When the father became the beneficiary of an apparently sizeable inheritance, the mother sued him for the accrued child support. The father attempted to have the action set aside, based on the parties' agreement; he argued that because he failed to pay only in accordance with their agreement, the mother should be estopped from enforcing the dissolution judgment. We rejected the argument, acknowledging that "[t]he result here does appear to be somewhat unfair to [the] father * * *." *Id.* at 99. Nevertheless, we held, Oregon law does not allow the courts effectively to modify a dissolution judgment on the basis of equitable considerations. *Id.* at 99-100.

We addressed the same issue again in *Sheldon and Sheldon*, 82 Or App 621, 728 P2d 946 (1986), *rev den* 302 Or 615 (1987). In that case, the mother was ordered to pay child support, and the father was ordered to make monthly payments to the mother on a promissory note as part of the property distribution. Several years later, the father filed for

bankruptcy, and the debt to the mother on the note was discharged. The mother stopped paying child support, contending that she and the father had agreed that she no longer had to pay child support in view of the fact that the father no longer would be paying on the promissory note. The father filed a contempt action, but the trial court instead ordered the father to enter a satisfaction of judgment for all of the mother's unpaid child support payments. We reversed. We first observed that the mother's contention that the parties had agreed to waive her support obligation was not supported by the record. "In any event," we went on to say, citing *Starzinger*, "the law in Oregon is clear that a court may not order accrued support satisfied on either equitable or estoppel grounds." *Sheldon*, 82 Or App at 624.

We came to a similar conclusion in *Wyllie and Wyllie*, 95 Or App 109, 767 P2d 931, *rev den* 307 Or 611 (1989). In that case, a 1975 dissolution judgment ordered the husband to pay child support for each of four children, plus spousal support to the wife. The judgment also gave the husband a lien on the family home and provided that, in 1981, the wife was to pay the husband $8,000 for his interest in the property. In February of 1986, the wife filed a contempt motion, contending that the husband was in arrears on his child support payments. The husband responded that, two years earlier, the parties had reached an oral agreement by which the wife surrendered all claims to further child support in exchange for the husband's agreement to relinquish the $8,000 lien on the wife's house. The wife contended that she entered into no such agreement. Citing *Starzinger*, we held that

> "even if the parties did reach an oral agreement, the divorce decree imposing the support obligation was never modified. Because the decree was never modified, [the] husband's support obligations remained."

*Wyllie*, 95 Or App at 111.

In this case, father contends that the parties agreed that his payment of mother's consumer credit obligations would satisfy his child support obligations and that mother should not be heard to contend otherwise. Thus, the facts of

this case are not materially different from *Starzinger*, *Sheldon* or *Wyllie*. As in each of those cases, father in this case asserts that the parties agreed to substitute something other than what is called for in the dissolution to satisfy his obligation to pay child support in accordance with the terms of that judgment. And, as in each of those cases, we reject father's contention in this case. ORS 107.135(6) simply does not authorize a court to modify the terms of a dissolution judgment in that fashion.

Father insists that the foregoing case law is distinguishable, because it does not involve an express agreement to substitute child support made *before* the obligations became due. In none of the cases did we draw upon that distinction as a basis for our decisions. Aside from that, father simply is incorrect that, in each of the cases, the agreements were made before the child support obligations accrued. In *Wyllie* that appears to have been the case. But in both *Starzinger* and *Sheldon*, the parties entered into their agreements to substitute other forms of payment in lieu of child support before the obligations accrued, and, in both cases, we still held that the agreements could not be enforced, because the dissolution judgment remained unaltered as the obligations accrued.[2] We conclude, therefore, that the trial court erred in crediting father's child support arrearage to the extent of his payments on mother's credit card debts.

---

[2] The dissent joins father in contending that *Starzinger* and *Sheldon* are distinguishable on this basis. The dissent acknowledges that, in both cases, agreements between the parties were made before the accrual of support obligations. Nevertheless, it asserts that the cases are not controlling. Regarding *Starzinger*, the dissent argues that the case is materially different because the agreement in that case "encompassed only a promise to forgo contempt proceedings; it did not involve payment of support." 147 Or App at 328-29. That ignores the plain fact that the father in that case appealed from a judgment for past due support, not a judgment of contempt, and that he asserted the parties' supposed agreement as the basis for avoiding the child support obligation itself, not merely avoiding contempt proceedings. *Starzinger*, 82 Or App at 98. Thus, the issue that was before us in *Starzinger*, and the issue we decided in that case, was precisely the same as the one before us in this case. As for *Sheldon*, the dissent asserts that the case is distinguishable because the mother "made the request for an offset *after* her obligation to pay support had accrued." 147 Or App at 329. That ignores the fact that the mother made her request on the basis of an agreement that supposedly took place *before* the obligation to pay support accrued. *Sheldon*, 82 Or App at 623-24. Thus, again, the facts of our prior decision are materially indistinguishable from the facts of this case.

We turn to the remaining credits, for the purchase of a car, the payment of insurance premiums, the purchase of clothing and other expenses for which father voluntarily paid. In *Grage and Grage*, 128 Or App 409, 413, 876 P2d 350, *mod on recons* 131 Or App 158, 884 P2d 589 (1994), *rev den* 320 Or 507 (1995), we held that

> "direct contributions of services or clothing to the children may not constitute a substitute form of child support, unless authorized by statute or regulation."

Moreover, some of the expenditures for which father apparently received credit were made after their child turned 18. We conclude that the trial court erred in allowing credits for such payments against father's child support arrearage.

Reversed and remanded for entry of judgment of arrearage in the amount of $8,005.59.

**RIGGS, P. J.,** dissenting.

I agree with the majority that the trial court erred to the extent that it treated as support father's purchase of non-support items or payments made directly to the child. My disagreement with the majority begins with its treatment of the credit card payments that father allegedly made in accordance with the parties' agreement that those payments would satisfy the support obligation. The majority says that we need not decide whether the parties entered into an agreement to substitute father's payment of the credit card bill for child support payments, because, even if the parties reached that agreement, it would be unenforceable. The majority says, "agreements between the parties as to the terms of the support obligation cannot be enforced by the court *as to installments that already have accrued.*" (Emphasis supplied.) That is a correct paraphrase of ORS 107.135(6), which provides,

> "[t]he decree is a final judgment *as to any installment or payment of money which has accrued.*" (Emphasis supplied.)

I would agree with the majority's statement, except that it does not accurately reflect the circumstances of this case, which show that before the accrual of the installments for

support, the parties agreed to substitute father's payments of the credit card bill for his child support payments. In my view, there is nothing in the statutes or case law that prohibits them from doing that.

In support of its holding, the majority cites three cases, *Sheldon and Sheldon*, 82 Or App 621, 728 P2d 946 (1986); *Starzinger v. Starzinger*, 82 Or App 96, 98, 727 P2d 168 (1986), and *Wyllie and Wyllie*, 95 Or App 109, 767 P2d 931, *rev den* 307 Or 611 (1989), each of which stands for the rule that equitable principals may not be applied to alter *accrued* child support obligations. The Supreme Court said in *Eagen and Eagen*, 292 Or 492, 640 P2d 1019 (1982), that a judgment for support, *i.e.*, any support obligation that has accrued, is deemed satisfied only if paid according to its terms, and that an accrued judgment will not be set aside on equitable grounds. We have stated the same rule repeatedly, in the opinions cited by the majority. The distinction here, however, is that, when the parties reached their agreement, the obligations had not yet accrued.

In somewhat of an analytical shift, the majority then says that both *Starzinger* and *Sheldon* also prohibit express agreements as to substitute child support made *before* accrual of the payments. I do not understand those cases to reach or require that holding. In *Starzinger*, the mother had allegedly agreed to forgo *contempt proceedings* against the father for nonpayment of child support in exchange for the father's promise to give up his visitation rights. When the mother later sought payment of support that had accrued before and after the alleged agreement regarding contempt proceedings, a trial court entered judgment for the mother. The trial court's judgment, in essence, acknowledged the father's obligation for payment of support that had accrued subsequent to the parties' agreement with regard to contempt proceedings. The father sought to have the judgment set aside on equitable grounds, but the trial court denied the motion. We rejected the father's arguments on appeal from that ruling, saying that the court was without authority to apply equitable principles to modify the judgment. The case is distinguishable most significantly for the reason that the agreement between the parties encompassed only a promise

to forego contempt proceedings; it did not involve payment of support.

In *Sheldon*, the mother, who was obligated by the parties' dissolution judgment to pay child support, became delinquent in her payments and accrued an arrearage. The father had, in turn, been required, as a part of his obligation under the dissolution agreement, to execute an interest-bearing note to the mother which, after the accrual of the mother's arrearage, was discharged in bankruptcy. In the light of the discharge, the mother sought elimination of her ongoing support obligation and satisfaction of her accrued support obligation, claiming that the parties had explicitly intended the note and support payments to offset each other. The trial court granted each of the mother's requests. We affirmed the trial court's termination with regard to the future support obligation but reversed its satisfaction of the past due support obligation, saying that "a court may not order accrued support satisfied on either equitable or estoppel grounds." 82 Or App at 624. Again, the case is distinguishable. Although the parties had apparently agreed that the support and note payments would offset each other, there had been no agreement between the parties that mother's obligation to pay support would terminate on father's inability to make payments on the note. Mother made the request for an offset *after* her obligation to pay support had accrued.

In short, the cases cited by the majority stand for no more than the undisputed proposition that there can be no satisfaction of an *accrued* support obligation other than by payment of the support. I would hold that, in the absence of evidence of an adverse impact on the best interests of the children, there is no restriction on the parties' ability to reach a private agreement, before accrual of the support obligation, as to how that obligation is to be satisfied. That is what the parties did in this case. There simply is no arrearage on these facts, and the trial court's judgment should be affirmed.

I dissent.