## T.M. *vs.* L.H.[1]

No. 99-P-376.

Hampden. October 12, 2000. - February 12, 2001.

Present: Brown, Smith, & Lenk, JJ.

*Parent and Child,* Child support. *Probate Court,* Judgment, Attorney's fees, Costs. *Contempt. Damages,* Contempt.

A Probate Court erred in granting a father credit against his child support arrearages for the father's payment of funeral expenses for the child, who had died at the age of nineteen and who was neither domiciled with the father nor dependent on him, where no compelling circumstances of an equitable nature warranted such an award; the matter was remanded for further consideration. [860-863]

In a contempt proceeding, the judge's findings did not disclose the reasons for not awarding the mother her requested attorney's fees and costs, and in light of this court's remand of the issue of child support arrearages, the issue of attorney's fees was remanded for further consideration. [863]

COMPLAINTS to establish paternity filed in the Hampden Division of the Probate and Family Court Department on July 16, 1991.

Complaints for contempt, filed on March 10, 1998, were heard by *Marie E. Lyons,* J.

*John Connor,* for the defendant, submitted a brief.

LENK, J. By judgments of paternity dated August 29, 1991, the defendant was adjudged to be the father of two children, Philip (born July 18, 1978) and Sarah (born April 30, 1981), and was ordered to pay $35 per week ($17.50 per child) for the support of the children.[2] On January 29, 1998, Philip committed suicide.

On March 10, 1998, the plaintiff (mother) filed two complaints

[1]We use fictitious initials for the parties and fictitious names for their children.

[2]We draw our facts and procedural history of the case substantially from the judge's findings of fact and conclusions of law.

for contempt alleging that the father had failed to comply with the support order[3] and was in arrears in his support payments for both children. After a hearing on the contempts, a judge of the Probate Court entered a "temporary order" on the mother's complaint as to Philip, directing the father to provide a headstone for Philip's grave. The order recites that, if the father complied with the court's directive by a specified date, the mother's complaint for contempt would be dismissed. No attorney's fees were awarded in connection with this complaint. The judge also entered a "temporary order" on the mother's complaint as to Sarah, adjudging the father guilty of contempt, fixing arrearages at $1,295.50, and ordering the father to pay sheriff's costs of $25 and attorney's fees in the amount of $250. From these orders, the mother appeals.[4]

As the mother's challenge to the temporary orders is directed, in part, at the judge's calculation of arrearages and the reductions thereto, we set out in detail the methodology employed by the court. The judge found that, from the entry of the support order in August, 1991, until Philip's eighteenth birthday in July, 1996, the father was obligated to make payments for Philip's support in the amount of $4,439.75.[5] Continuing, the judge found that, from August, 1991, until April, 1998, the father was

---

[3]The order for payment of support was contained both in the judgments of paternity and in the separate wage assignment orders.

[4]On the mother's petitions under G. L. c. 231, § 118, first par., a single justice of this court granted the parties leave to appeal.

[5]There is no indication in the record before us that Philip, upon attaining the age of eighteen and relocating to Massachusetts (see note 6, *infra*), was domiciled with *and* principally dependent upon the father for maintenance, or that the father was under court order to pay support for Philip. See and compare G. L. c. 209C, §§ 1, 9(*a*) ("Every person is responsible for the support of his child born out of wedlock from its birth up to the age of eighteen, or, where such child is domiciled in the home of a parent and principally dependent upon said parent for maintenance, to age twenty-one"); *Conlon* v. *Sawin*, 420 Mass. 735, 737 (1995); *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 445 (2000). See also *Feinberg* v. *Diamant*, 378 Mass. 131, 135-136 (1979) (although Probate Court did not have jurisdiction under G. L. c. 208, § 28, to award support for a mentally incapacitated adult child, court could act pursuant to its general equity power to decide all matters relative to persons placed under a guardianship); *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 518-519 (1987) (where parties, by agreement, made provision to support children past the age of twenty-one); *Cournoyer* v. *Cournoyer*, 40 Mass. App. Ct. 302, 306 n.2 (1996).

We note also that the father made no argument below (and no issue is raised on the appeal) that the mother delayed unreasonably in bringing her

obligated to make payments for Sarah's support in the amount of $6,020. The father's total obligation for the support of the two children (i.e., the amount that would have accrued if no payments were made and if payments were not suspended under the terms of the original judgment) thus amounted to $10,459.75.

The judge then made certain adjustments to the father's total support obligation. Specifically, she found that the father had made his support payments in 1991 and 1992, in the amount of $2,408, and was not in arrears for those periods. (The judge noted that the father stopped paying child support in 1993 and that arrears then began to accrue.) The judge also found that, pursuant to the 1991 support order, the father's support obligation was suspended during those periods when the children resided with him and that he did not owe support for those periods in the amount of $376.25. Finally, the judge found that the father had paid all of Philip's funeral and burial expenses in the amount of $6,000 and was responsible for the purchase of the headstone for Philip's grave at a cost of $380.[6] The judge treated these amounts as payments toward the father's "overdue child support obligation."

The judge determined that the father had paid $9,164.25 toward the support of his children since the entry of the 1991 order and credited that amount against the total support obligation of $10,459.75. As we have stated, the judge concluded that

---

contempt action as to Philip. Cf. *Heider* v. *Heider*, 34 Mass. App. Ct. 634, 637 (1993); *Flynn* v. *Connors*, 39 Mass. App. Ct. 365, 372 & n.10 (1995).

[6]There was substantial evidence at the contempt hearing concerning the circumstances surrounding Philip's burial. Philip, at one point, had resided in Texas with the mother (who continues to reside there). He apparently relocated to Massachusetts about sixteen months prior to his death. The mother testified that she wanted Philip to be buried in Texas but that the father would not allow it. She represented, through counsel, that the parties eventually entered into an agreement whereby she consented to Philip's being "buried . . . [in Massachusetts] in order to get him buried within a reasonable amount of time, and in return [the father] would bear the costs [of the funeral]." The mother further represented that had she been able to remove Philip to Texas, she would have paid for all of his transportation costs and funeral expenses. The mother claimed that the parties' agreement concerning Philip had "nothing to do" with the father's failure to pay child support. The father, in response, testified that "[t]here was no agreement whatsoever with [him] paying the full funeral costs." He also stated that the mother failed to give him "any hand or help" with the funeral.

the father was guilty of contempt for his failure to comply with the support order as to Sarah and fixed arrearages at $1,295.50.[7]

1. General Laws c. 119A, § 13(a), as inserted by St. 1987, c. 714, § 1, provides as follows: "Any payment or installment of support under any child support order issued by any court of this commonwealth . . . shall be on or after the date it is due, a judgment by operation of law, with the full force, effect, and attributes of a judgment of this commonwealth including the ability to be enforced; shall be entitled as a judgment to full faith and credit; and shall not be subject to retroactive modification except with respect to any period during which there is pending a complaint for modification, but only from the date that notice of such complaint has been given . . . ."[8] "The object of § 13(a) was to give support orders the finality of other judgments, to assist the [Department of Revenue] in its enforcement efforts." *Smith-Clarke* v. *Clarke,* 44 Mass. App. Ct. 404, 406 (1998). To this end the Legislature limited the power of a judge to reduce retroactively any arrearages in child support except for any period during which there is a pending complaint for modification. *Quinn* v. *Quinn,* 49 Mass. App. Ct. 144, 147-148 (2000).

In the instant matter, the judge, apparently with an eye to § 13(a), explained that she was "not reducing or retroactively modifying any arrears that may have accumulated since the

---

[7]As noted, *supra,* the order for payment of support was contained in both the judgments of paternity and the wage assignment orders. Although the judgments of paternity required the father to make payments to the mother, the wage assignment orders did not specify to whom the payments were to be made. As a result of this "discrepancy," the judge concluded that there was no clear and unequivocal command as to *whom* the payments were to be made. (The judge stated that the father paid funeral expenses for Philip "in lieu of paying the money directly to the [mother].") Nonetheless, the judge found that the "order was clear and unequivocal with regard to the portion which required him to pay support for his children."

We disagree with the judge's finding that there was no clear and unequivocal command as to whom support payments were to be made. See *Larson* v. *Larson,* 28 Mass. App. Ct. 338, 340 (1990). The judgments of paternity make clear that the payments were to be made to the mother and there is no indication in the record that the father was confused by the court's orders. To the contrary, the father stated at the contempt hearing that, upon entry of the judgments, he "follow[ed] the guidelines that the court had set down" and kept up with his support payments for a year and one-half.

[8]Although the mother relies in her brief on the above-quoted version of § 13(a), we note that the section was amended by St. 1998, c. 64, § 161. Nothing in the present case turns on the amendment.

entry of the support order in 1991, because arrears [had] not previously been established in [the] case." Rather, the judge stated that she was "establishing the arrearage for the first time, by factoring the amount of the weekly obligation, the amount of time the order was suspended, and the amounts which have been paid by the defendant." Noting that the father may only be found to be in arrears for the amounts that he has not paid, the judge stated that "[i]n this case the payments of child support were overdue but *they no longer remain unpaid* (except as to the amount . . . [of $1,295.50])" (emphasis in original).[9]

The mother challenges the court's rationale and decision arguing, essentially, that the judge's orders modify support retroactively in contravention of § 13(*a*). The mother also argues that the judge erred by allowing the father a credit (or offset) for his payment of Philip's funeral and burial expenses.[10] No controlling Massachusetts case law has been called to our attention (and we are aware of none) on the specific issues raised by the appeal.

As a general rule, a support obligor must make his or her payments in the manner required by the support order or judgment. See *Thacker* v. *Thacker*, 710 N.E.2d 942, 944 (Ind. Ct. App. 1999); 24A Am. Jur. 2d Divorce and Separation § 1066 (2d ed. 1998); 27C C.J.S. Divorce § 708 (1986). The reasons for the rule are manifest: a support obligor should not be allowed to modify unilaterally a support order or interfere with the right of the custodial parent to decide how support money should be spent. See *Alaska Dept. of Rev.* v. *Campbell*, 931 P.2d 416, 420 (Alaska 1997); *Goold* v. *Goold*, 11 Conn. App. 268, 274 (1987); 24A Am. Jur 2d Divorce and Separation § 1066.

---

[9]The judge also invoked G. L. c. 119A, §§ 6(*b*)(11) and 12 (*e*)(2), for the propositions that the court may "correct any mistake of fact" made in the calculations, and that the court has authority, upon determining at the hearing that the total amount of arrears calculated is erroneous, to "reduce the amount calculated to correct the amount."

[10]We include within the funeral and burial expenses the cost ($380) of the headstone for Philip's grave. At the hearing on the contempts, the father testified that he soon would be purchasing the headstone and he appears to have submitted to the court a statement of the cost of the headstone.

Other payments made by the father are not in issue. Nothing in this opinion should be viewed as altering the principle that, if arrears are paid in full prior to hearing, a defendant may seek to have the contempt complaint dismissed. See 2 Harvey, Moriarty, & Bryant, Massachusetts Domestic Relations § 19-67 (2000).

Notwithstanding the general rule, a number of jurisdictions have recognized that special circumstances of an equitable nature may arise that justify the grant of a credit to a support obligor for payments or expenditures made that were not in strict compliance with the support order or judgment. See, e.g., *Alaska Dept. of Rev.* v. *Campbell*, 931 P.2d at 419-420 (noting that there are "strict limitations" on the grant of credits by a court for voluntary payments); *Goold* v. *Goold*, 11 Conn. App. at 274-275; *Baer* v. *Baer*, 263 Ga. 574, 575-576 (1993); *Griess* v. *Griess*, 9 Neb. App. 105, 112-113 (2000). See also 47 A.L.R.3d 1031 (1973 & Supp. 2000). Cf. *Cohen* v. *Murphy*, 368 Mass. 144, 145-148 (1975); *Rosenberg* v. *Merida*, 428 Mass. 182, 185-187 (1998); *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 451-452 (2000); *Whelan* v. *Frisbee*, 29 Mass. App. Ct. 76, 82 (1990). Whether a credit is to be given necessarily depends upon the facts and circumstances of each case.

Here, the judge's (implicit) construction of G. L. c. 119A, § 13(*a*), suggests a belief on her part "that there is a distinction between modifying support arrearages to effect a retroactive decrease in the amount or level of support originally ordered and granting equitable credits against those arrearages [or in establishing the amount of the arrearages] to reflect support payments made in some manner other than [as directed by the original order]." See *Schulz* v. *Ystad*, 155 Wis. 2d 574, 596 n.4 (1990) (where the issue was noted but not reached by the court). Apparently, it is the judge's view that only the former practice retroactively revises the amount of support due under the order or judgment for child support and, consequently, is the only practice which § 13(*a*) proscribes. See generally *Quinn* v. *Quinn*, 49 Mass. App. Ct. at 148 (wife's agreement to accept *less* child support than provided by the court order did not constitute a defense to the wife's complaint for contempt). We need not, and do not, decide the question for, even if we were to assume that a judge, in compelling circumstances of an equitable nature, and without contravening G. L. c. 119A, § 13(*a*), may apply a credit in calculating child support arrearages to reflect payments made in a manner other than as directed by the original order, there is no basis for the grant of a credit *in this case*.

First, Philip had attained the age of eighteen at the time of his death and, as we have stated, nothing in the record before us establishes that he was domiciled with *and* principally dependent

upon the father for maintenance. The father's payment of funeral and burial expenses was thus akin to payments made for the benefit of an adult (or emancipated) child — one whom the father no longer had a legal obligation to support (see note 5, *supra*).[11] See generally *Wood* v. *Wood,* 434 So. 2d 800, 801 (Ala. Civ. App. 1983) (court may not give father credit against arrearages for support furnished to child who has attained age of majority); *In re Marriage of Forrester,* 147 Or. App. 319, 327, *S.C.,* 149 Or. App. 111 (1997) (court erred in allowing father credits for certain payments, including payments made after the child had turned eighteen, against child support arrearages); *Johnson* v. *Johnson,* 338 S.E.2d 353, 355 (Va. App. 1986) (father's payments to adult children were gifts or gratuities and cannot be credited to his obligation to pay support award). But see *Nichols* v. *Tedder,* 547 So. 2d 766, 781 (Miss. 1989).[12] Second, it is difficult to perceive how the father's payment of funeral expenses constitutes "substantial compliance" with the child support order, i.e., accomplishes the spirit and purpose of the order, the maintenance of the child. See 2 Clark, The Law of Domestic Relations § 18.3 (2d ed. 1987). See also *Baer* v. *Baer,* 263 Ga. at 576, citing *Farmer* v. *Farmer,* 147 Ga. App. 387 (1978). Indeed, it is to be presumed that the purpose of the order was to provide for the support of the children during their dependency, a duty that the father failed absolutely to fulfill. Third, there is no indication in the record that the mother consented to accept the father's payment of funeral expenses as an alternative method of payment of child support (see note 6, *supra*). See *Goold* v. *Goold,* 11 Conn. App. at 275, 277. See and compare *Quinn* v. *Quinn,* 49 Mass. App. Ct. at 148. Finally, the judge, by granting the father a credit in the calculation of the support arrearages, has, effectively, required the mother,

---

[11]The father made no claim at the contempt hearing that he was legally obligated to pay for Philip's funeral expenses. See and compare G. L. c. 117A, §§ 7, 9, 10. The mother suggested below, and suggests on appeal, that Philip's estate is properly accountable for the expenses. No specific evidence was adduced at trial concerning the nature and extent of Philip's estate.

[12]We leave open the question whether there may be *any* circumstances in which a judge properly may grant a support obligor a credit against arrearages for payments made for the benefit of an adult child whom he no longer has an obligation to support.

through support, to underwrite entirely Philip's funeral and burial.[13]

The foregoing factors converge to convince us that the present case presents no compelling circumstances of an equitable nature that would warrant the award of a credit to the father.

2. General Laws c. 215, § 34A, provides, in relevant part: "In entering a judgment of contempt for failure to comply with an order or judgment for monetary payment, there shall be a presumption that the plaintiff is entitled to receive from the defendant, in addition to the judgment on monetary arrears, all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation, and prosecution of the complaint for contempt. The contempt judgment so entered shall include reasonable attorney's fees and expenses unless the probate judge enters specific findings that such attorney's fee and expenses shall not be paid by the defendant." See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 666 (1986); *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. 176, 180-181 (1986), *S.C.*, 400 Mass. 272 (1987); *Bisienere* v. *Buccino*, 36 Mass. App. Ct. 749, 753 (1994).

At the contempt hearing, the mother requested attorney's fees in the amount of $1,095, sheriff's fees of $25, travel costs of $210, and lost wages of $274.24. She now argues that the judge, by awarding her only $250 in attorney's fees and $25 in costs, failed to adhere to the requirements of § 34A. As the judge's findings do not disclose the rationale for her award of attorney's fees and costs, see *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. at 181 ("The presumption under § 34A can be overcome only by specific findings supporting a reduction in a request for reasonable fees"), and as our decision in the present case may affect the award, we think that the judge should revisit the issue of fees. See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. at 667 (revision of the order for fees is appropriately the province of the probate judge). Any monetary contempt order should carry with it interest in accordance with G. L. c. 215, § 34A, fifth par.

3. The "temporary order[s] on contempt" dated May 21, 1998, are vacated and the matter is remanded to the Probate Court with directions that the judge (1) enter new orders establishing arrearages in an amount consistent with this

---

[13]We note also that the judge's orders reduce, to some extent, the arrearages accrued as to Sarah.

opinion, and (2) reconsider the amount ordered for attorney's fees and expenses.

The mother has requested her attorney's fees and costs in connection with this appeal. Having prevailed on the appeal, the mother "may . . . submit [her] petition for [appellate] fees together with the necessary back-up material and details as to hours spent, precise nature of the work, and fees requested," within fifteen days of the issuance of the rescript in this case. See *Eldim, Inc.* v. *Mullen*, 47 Mass. App. Ct. 125, 131 (1999), quoting from *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989). See also *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 343-344 (1990).

*So ordered.*