[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Robert Statchen for plaintiff.
Sullivan, Reis, Sanchy Logan for defendant.
The parties to this case had been married. They had one son, Philip Bennett, III, born May 16, 1974, who was issue of the marriage. A judgment dissolving the marriage was entered in the Superior Court at Waterbury under docket number 41113. Initially, custody of Philip III was awarded to the plaintiff mother. The defendant was ordered to pay child support of $35 per week plus $15 per week in alimony. In 1980, custody was modified, and has been with the defendant father since then. The defendant's child support order was terminated, but no support order was entered against the plaintiff mother.
After the dissolution of marriage, the plaintiff and the defendant renewed their relationship. The plaintiff became pregnant, and on June 14, 1977, she gave birth to a son, Christopher Bennett. The parties did not remarry, and eventually separated again. Christopher has resided with his mother. The action now before the court is a paternity petition to establish the parentage of Christopher. The plaintiff also seeks past due support for three years prior to the commencement of this action, and an order for current child support. CT Page 4710
DNA testing was completed, and a probability of paternity was reported of 99.86 percent. On January 31, 1994, this court entered a paternity judgment. The defendant was ordered to pay $70 per week as a temporary support order. The defendant objects to any finding of past due support and he argues that the court should deviate downward from the child support guidelines for current support.
The defendant argues that he had an agreement with the plaintiff that neither would pay support. As Mr. Bennett explained the agreement, "She had one child. I had one child. It balanced out."
Both the Family Support Magistrate Division and the Family Division of the Superior Court have often had occasion to rule on questions of offset of child support obligations because of defacto custody arrangements. The most recent such reported case, from this very court, was Anderson v. McFarlane, 7 S.M.D. 131 (1993). The case includes a listing of previous cases on the issue.Id., 133. Most of these cases concern ad hoc changes by the parties after court determinations of the proper level of support. It has generally been held that once the court had issued a support order, the parties are not at liberty to substitute their own arrangements without court sanction. See e.g., Goold v. Goold,11 Conn. App. 268, 527 A.2d 696 (1987), Fialko v. Fialko,6 Conn. L. Rptr. 574 (1992); Samatowitz v. Samatowitz, 4 S.M.D. 30, 33 (1990).
The instant case is distinguished from the foregoing because there was no previous child support order for Christopher. The custodial parent does have a right to seek past due support for three years prior to the commencement of the paternity action. General Statutes §§ 46b-160(a), 46b-171, 46b-172(a). However, this applies where the non-custodial parent has neglected or refused to provide support for his or her child. See Favrow v.Vargas, 222 Conn. 699, 717 (1992). Here, the credible testimony establishes that the parties had agreed to each support the child resident with each.[1] Their conduct was not in contradiction to a court order because there was none.
It is also noteworthy that the parties were before the court in Waterbury in 1980. Christopher was born in 1977, so he was already on the scene. It is not known whether or not his existence was disclosed to the judge in the modification proceedings, but there was certainly the opportunity to take action at that time to CT Page 4711 determine his parentage and establish a support order.[2] Instead, the court's action in terminating support for Philip III is consistent with the defendant's position. It suggests that the court sanctioned a split custody arrangement with the mutual support obligations balancing out.
The situation in the instant case most closely resembles that inO'Conner v. O'Connor, 6 Conn. L. Rptr. 575, 7 CSCR 817
(1992). After rejecting defenses based on an out of court agreement, waiver, and laches, the court found equitable estoppel because "the plaintiff induced the defendant into believing that the plaintiff would raise two of the children, the defendant would raise the eldest child and neither party would be responsible for paying support to the other." Id., 577.
"`Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position.' 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 804, p. 189; 28 Am.Jur.2d, Estoppel and Waiver § 76." Bozzi v. Bozzi,177 Conn. 232, 241, 413 A.2d 834 (1979); O'Connor v. O'Connor,6 Conn. L. Rptr. 575, 576, 7 CSCR 817 (1992); Diana v.Diana, 4 S.M.D. 56, 59 (1990). "Its two essential elements are that one party must do or say something which is intended or calculated to induce another party to believe in the existence of certain facts and to act on that belief, and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." Bozzi, supra, 242;Kellogg v. Kellogg, 7 CSCR 55 (1991). Equitable estoppel was also found in Bodetka v. Bodetka, 5 S.M.D. 391, 10 Conn. Fam. L. J. 54 (1991); Bigonesse v. Bigonesse, 7 S.M.D. 114 (1993); and Colber v. Colber, 7 S.M.D. 34 (1993). In each of those cases the trial court found an actual agreement regarding payment of support, and a reliance by the obligor on that agreement.
The court finds that there was an agreement between the parties to offset their respective support obligations. Philip III, the son with the defendant, has cancer, and in addition to routine necessities, the defendant has incurred substantial unreimbursed medical costs for him. He did not pursue a support order against the plaintiff. This was at least in part in reliance on his understanding of the agreement to offset support. The plaintiff is now equitably estopped from asserting claims for past due support CT Page 4712 during Philip's minority.
Philip has continued to reside with the defendant since he turned eighteen, and he has incurred further medical costs. The defendant urges this court to apply deviation criteria (H), "extraordinary unreimbursable medical expenses," and (N) "other equitable factors" as defenses against the claim for current support for Christopher. The court finds that these factors do apply.[3] See Dudley v. Keegan, 2 S.M.D. 13 (1988). However, the court must also recognize that although still dependent on his father, Philip has passed the age of majority. Therefore, the agreement to offset support no longer applies, since the legal duty of both parents to support their children has expired as to Philip but not as to Christopher. Additionally, the plaintiff herself has medical problems. She no longer works in her profession as a registered nurse, but relies on disability income. Taking these factors, as well as the other statutory factors into account, this court finds an arrearage for past due child support owed by the defendant to the plaintiff, for the period May 17, 1992 to January 31, 1994 in the amount of $4,000.00. The temporary order of $70 per week, which was effective on January 31 is made permanent for the period January 31, 1994 through May 16, 1994. The support order is increased to $82 per week for current support plus $8 per week on the arrearage, for a total of $90 per week, effective May 17, 1994. Current support will terminate on June 14, 1995, when Christopher reaches eighteen. The arrearage order will then increase to $80 per week until all arrearages are paid in full.
Immediate wage withholding is ordered. Each parent is ordered to provide medical and dental insurance for Cr Christopher's benefit as available through employment or group plan at reasonable cost. Each parent shall pay 50 percent of any unreimbursed or uninsured medical or dental costs. The provisions of General Statutes § 46b-84(c) shall apply.
LIFSHITZ, MAGISTRATE