[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 7, 1997
The principal issue in this motion for modification of child support is whether or not "split custody" as defined by the Child Support and Arrearage Guidelines (Guidelines) requires that the moving party have an actual custody order. This appears to be a matter of first impression.
FACTS
The parties' marriage was dissolved on June 8, 1994. There are three minor children issue of the marriage. The court ordered joint custody with plaintiff mother receiving physical custody of all the children. Since early 1996 the oldest minor child, age 14, has resided with the defendant father. There has been no modification of the June 8, 1994 custody order.
On December 11, 1996 the father filed a motion for modification of child support pursuant to C.G.S. 46b-86 (b) on the basis that the mother has been cohabiting with an unrelated male. After an evidentiary hearing, the motion was denied. In January, 1997 the father served an order to show cause seeking modification of the joint custody order concerning the location CT Page 4877 and education of the minor children. The motion is still pending. A custody study has been ordered by this court. The parties have treated the January, 1997 motion as a custody modification motion. Other than the referral to Family Relations for a full custody study, no other orders have entered modifying the June 8, 1994 decree.
On March 4, 1997 the father filed a motion to modify support, alleging that the oldest child is now living with him. His motion stated "this support modification would be based on the standards adopted for split custody as provided on page VII and page 8 of the Child Support Guidelines." Both parties submitted financial affidavits. They were unsuccessful in their attempt to resolve their differences through Family Relations. The current financial orders were those entered on June 8, 1994; $209 per week child support to be paid by the defendant father to the plaintiff mother. With the assistance of a Family Relations Officer, the parties prepared a "split custody" Worksheet A in accordance with the Guidelines. This worksheet demonstrated that the father's child support obligation would be reduced to $105 per week if the court determined this was "split custody."
The mother claims this is not a "split custody" situation since there is no order changing custody. The order of custody still remains as of June 8, 1994; joint custody to both parents with the physical custody of all three children with the mother.
DISCUSSION OF LAW
The issue in this case is the interpretation of the Child Support and Arrearage Guidelines. The current Guidelines are effective June 1, 1994. "The child support and arrearage guidelines . . . shall be considered in all determinations of child support amounts . . . In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support . . . to be ordered." C.G.S. § 46b-215b(a).
The inclusion in the Guidelines of the consideration of "split custody" is relatively new. "Split custody" has been defined by the Guidelines as "a situation in which there is more than one child in common and each parent is the custodial parent of at least one of the children." Section 46b-215a-1. Definitions (20).
"`Custodial parent' means the parent who provides the child's primary residence." Section 46b-215a-1. Definitions (7).
CT Page 4878
The mother argues that she is the custodial parent by reason of the current custody order. She is correct in claiming that the custody order has not been modified. Her argument is supported by Judge Karazin's comments in LaChapelle v. LaChapelle, 8 CONN. L. RPTR. 339, 1993 Ct. Sup. 572, January 28, 1993, (Karazin, J.). "`Split custody' has been defined to refer to arrangements where one parent has sole, legal and physical custody of one or more children and the other parent has sole, legal and physical custody of the remaining children. See, 8 Rutkin, Effron andHogan, Connecticut Practice Bk 41.10 at p. 162 (1991)" LaChapellev. LaChapelle, supra 574.
The father argues that the definition of "custodial parent" in the Guidelines does not refer to a custody order but to the actual residence of the child. He also finds support inLaChapelle v. LaChapelle. "However, some courts have also used the term to refer to a situation where the parties disagree as to split physical custody although they agree to joint legal custody." LaChapelle v. LaChapelle, supra 574. The defendant further argues that a plain reading of the Guidelines discloses that "split custody" is not based on orders of custody but the actual residence of the child.
The father's argument is supported by the rationale behind the June 1, 1994 Guidelines. "The Connecticut Child Support Guidelines are based on the Income Shares Model. The Income Shares Model is predicated on the concept that the child should receive the same proportion of parental income as he or she would have received if the parents lived together." PREAMBLE TO CHILDSUPPORT AND ARREARAGE GUIDELINES p. ii.
The Guidelines contain a section for "Determining the amount of support in split custody situations."
 In a split custody situation, as defined in section 46b-215a-1 of these regulations, separate obligations are computed for each parent in accordance with subsection (b) in this section, based on the number of children living with the other parent. A separate Worksheet A is used to compute each obligation. The separate obligations are then offset, with the parent owing the greater amount paying the difference to the other parent. Section 46b-215a-2. Child Support Guidelines (c) pg. 8.
CT Page 4879
The Guidelines are rules and regulations promulgated by the State of Connecticut under the authority of C.G.S. §46b-215a. Principles of statutory interpretation apply.
 Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. (Citations omitted: internal quotation marks omitted.) State v. Metz, 230 Conn. 400, 409, 645 A.2d 965 (1994); Edelstein v. Dept. of Public Health and Addiction Services, 240 Conn. 658, 664 (1997).
"We are mindful that in analyzing legislative action, our goal is to ascertain and give effect to the apparent intent of the legislature. In doing so, we look first to the plain, unambiguous language of the statute. Absent any ambiguity, we cannot properly engage in an analysis of the history underlying a governing statute." (Internal quotations and citations omitted.)Klug v. Inland Wetlands Commission, 30 Conn. App. 85, 90 (1993). It is not necessary to apply other legislative intent principles, if from the plain reading of the enactment, the intent is clear and unambiguous. Klug v. Inland Wetlands Commission, supra 91;Rhodes v. Hartford, 201 Conn. 89, 93 (1986); State v. Kozlowski,199 Conn. 667, 674 (1986).
CONCLUSION OF LAW
Although the mother's argument has some support in the definition of "split custody," it does not find support in other sections of the Guidelines. Her argument fails to focus on the definition of "custodial parent." The mother interprets "custodial parent" as meaning that parent who has been given a formal order of custody. The Guidelines defines a "custodial parent" as the parent who provides the child's primary residence. The Income Shares Model, upon which the current Guidelines are based, directs consideration of the income of the parent with whom the child resides. The actual calculation of an order of "split custody" support is "based on the number of children living with the other parent." Section 46b-215a-2 (c).
CT Page 4880
If the legislature and the Commission for the Child Support Guidelines had intended to limit "split custody" to those situations in which the children reside with separate parents each of whom had a custody order in their favor, they could have done so. This court is of the opinion that the plain language of the Guidelines contemplates that "split custody" can arise out of a situation in which the child's residence has been moved from one parent to another without a court order. The parties do not dispute that the 14 year old child is actually residing full-time with the father.
No appellate court has discussed this issue. The only reference to split custody by any appellate court is found inFavrow v. Vargas, 231 Conn. 1 (1994) in which the pre-June 1, 1994 split custody regulations were cited. "Where each parent has primary physical care and control of one or more of the children, the tentative child support obligations for each parent are adjusted as follows . . ." It appears that this pre-June 1, 1994 split custody regulation supports the wife's position. The June 1, 1994 Guidelines changed the rule using the phrase "based on the number of children living with the other parent." This change indicates that residence is now the determining factor, not a formal order of child custody.
The typical order in split custody situations usually does not involve this problem. In most situations, the "split custody" order is entered at the same time the child support is determined. Such orders are found in Walker v. Walker,1996 Ct. Sup. 4232, 4243, May 5, 1996, (Brennan, S.J.R.) and Obermeyer v.Obermeyer, 1996 Ct. Sup. 5261-JJ, August 9, 1996, (McWeeny, J.).
In an analysis of a similar concept known as shared custody, Judge Barall had an opportunity to comment on the Guidelines. "The court finds that the Commission did not intend to define `shared' parenting so narrowly as to require precisely a 50-50 time. If it had intended that only a 50% sharing to mean substantial time it would have been easy for it to say so."Mulholland v. Mulholland, 1994 Ct. Sup. 6578, 6585, June 13, 1994, (Barall, J.). Mulholland can be read to support the concept that the phrase "shared custody" and the phrase "split custody" should not be strictly construed. Legnos v. Legnos,1994 Ct. Sup. 12191, 12191-0, December 13, 1994, (Teller, J.).
A majority of these issues are decided in the Family Support CT Page 4881 Magistrates Division. The theory of "de facto custody" was discussed in Bennett v. Bennett, 1994 Ct. Sup. 4709, 4710,9 CSCR 848, April 24, 1994, (Lifshitz, Magistrate). "Both the Family Support Magistrate Division and the Family Division of the Superior Court have often had occasion to rule on questions of offset of child support obligations because of de facto custody arrangements." Bennett v. Bennett, supra 4710. Goold v. Goold,11 Conn. App. 268, 271, 275 (1987); Guss v. Guss, 1 Conn. App. 356,363 (1984).
Although no trial court or appellate court appears to have ruled on this issue, there are two unpublished trial court decisions that have "sub silentio" supported the proposition that split custody does not require a formal court order of custody.Memoli v. Memoli 1994 Ct. Sup. 10563, October 18, 1994 involved a 1993 decree with the custody of the two minor children being awarded to the plaintiff mother. The 13 year old child later decided to live with the father. Judge Dranginis ordered that the custody issue be mediated with the help of family services. The other minor remained with the mother. A motion to modify child support filed by the father was granted by Judge Dranginis. There was no mention in the decision of any change in the 1993 custody order. It can be inferred that family services was still conducting mediation and, therefore, the 1993 custody order had not changed. "While this is a `split custody' arrangement currently, for guidelines purposes, it is also a question of earning capacity, and the defendant father's misuse of property earmarked for the children in the decree, which he concedes he used to pay current child support amounts." Memoli v. Memolisupra 10563. Judge Dranginis, using the split custody formula under the June 1, 1994 Guidelines, modified the child support.
Judge McWeeny in Ballard v. Ballard, 1994 Ct. Sup. 10616, October 19, 1994 issued a similar order. The mother had legal custody of both minor children. Then the minor child, Chillon, decided to reside primarily with his father. This "constitutes a substantial change in circumstances requiring a change in the support order. The Commission for Child Support Guidelines issued pursuant to C.G.S. § 46b-215a, et seq., in this split custody situation, would require the Defendant to pay support to the Plaintiff in the amount of $62.00 per week, based on the financial affidavits filed October 13, 1994." Ballard v. Ballard,supra 10618. There is no mention in Ballard of any change in the custody order. By inference Ballard holds that the residence of the child is the only factor needed to determine "split custody." CT Page 4882 "The Court modifies the Plaintiff's support obligation from $100.00 to $0 for such period of time as Chillon remains residing primarily with the Plaintiff . . . In the event that Chillon returns to primary residence with the Defendant, Plaintiff's support obligation will return to the higher of the amount of $100.00 per week or the Guideline figure." Ballard v. Ballard,supra 10618. Memoli and Ballard both support the proposition that it is the actual residence of the child not the formal custody order that determines whether or not "split custody" guidelines apply.
A plain reading of the Guidelines indicates that "split custody" can occur when there is no formal order of custody in favor of the party with whom the minor child is living. In fact, in this case the June 8, 1994 order still remains in effect: joint custody with the physical custody of the three minor children remaining in the mother. The oldest daughter now lives with the father. That qualifies as "split custody." In accordance with the Guidelines, the child support should be modified.
The parties have agreed that orders will be retroactive to April 21, 1997. Based on the "split custody" Worksheet A, this court orders that child support be modified effective April 21, 1997 and that the Defendant pay to the Plaintiff, as child support, the sum of $105.00 per week.
TIERNEY, J.